IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBIN ALESSI, ALTON MORTON BRYANT, CHRISTOPHER MICHAEL BRYANT, KAREN COLEMAN, TONY COLEMAN, JAMES FARMER AND PATSY SCHULTZ | § § § § § | |
| *Plaintiffs,* | § § | |
| *v.* | § § § § | CIVIL ACTION NO. 3:25-cv-00445-K |
| SYNAGRO TECHNOLOGIES, INC., SYNAGRO OF TEXAS-CDR, INC., AND RENDA ENVIRONMENTAL, INC., | § § § § | |
| *Defendants.* | § | |

---

**DEFENDANT RENDA ENVIRONMENTAL, INC.'S**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)**
**AND BRIEF IN SUPPORT THEREOF**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

For the reasons more thoroughly set forth in the accompanying Brief in Support of Defendant's Rule 12 (b) (1) and 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint—Class Action (Doc. No. 36) ("Complaint"), Defendant, Renda Environmental, Inc., ("Renda"), moves to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12 (b) (1) because governmental immunity deprives the Court of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, Renda seeks dismissal of such claims as the Court may deem appropriate, including in particular the claims for strict liability, negligence, and the claims for punitive/exemplary damages as contained in the Complaint.

1

1.      On January 23, 2025, the Plaintiffs filed their First Amended Class Action Petition and Application for Mandatory Injunction in the 249th Judicial District Court of Johnson County, Texas. On February 21, 2025, all of the Defendants filed a Joint Notice of Removal to this Court. On February 25, 2025, the Court issued an order that the Defendants amend their Joint Notice of Removal by March 4, 2025.  On March 4, 2025, the Defendants filed their Amended Joint Removal Notice. Following the filing of the amended removal, the Defendants filed their first 12 (b) (6) Motions to Dismiss. The Plaintiffs then filed their Second Amended Complaint—Class Action [Doc. 36] on April 4, 2025. On April 7, 2025, the court issued an order denying the Defendants' Motions to Dismiss as moot in light of the Plaintiffs' filing of their Second Amended Complaint—Class Action.  Renda now files this Motion to Dismiss the Plaintiffs' claims asserted in their Second Amended Complaint—Class Action ("Complaint").

2.      In their Complaint, Plaintiffs now assert claims for strict liability, negligence and claims for punitive/exemplary damages.

3.      Renda initially moves to dismiss all of the Plaintiffs' claims based on governmental immunity since governmental immunity deprives the Court of subject matter jurisdiction to hear Plaintiffs' claims.

4.      Alternatively, Renda moves to dismiss all of the Plaintiffs' claims based on the Right to Farm Act. TEX. AGRIC. CODE § 251.001. The Right to Farm Act plainly applies here to protect Renda's long-established, heavily regulated use of municipal biosolids as a soil amendment for the benefit of Texas farms and ranches. The Texas Legislature has long recognized the importance of biosolids for supporting Texas farms and adopted (and expanded) the Right to Farm Act to ban private plaintiffs from asking courts to restrain lawful agricultural operations like Renda's. Plaintiffs have plead all necessary facts to establish that the Right to Farm Act bars their suit. The Court should dismiss this suit as authorized by Rule 12(b)(6).

5.     Alternatively, each of Plaintiffs' claims is insufficiently pled with respect to Renda, as further set forth in the accompanying brief.  Plaintiffs must state a claim that is plausible on its face, not merely possible or conceivable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And a claimant must include sufficient factual allegations to allow a court to reasonably infer liability. *Id.* at 678-79. In turn, a complaint's factual allegations may also ultimately negate a cause of action. *Id.* at 666. In analyzing the sufficiency of a claim, federal courts should disregard conclusory statements and determine whether the remaining factual allegations plausibly state a claim that raises the plaintiffs' right to relief above the speculative level. *Id.* at 678-79; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

6.     The Plaintiffs allege that the co-defendant (Synagro), on one occasion, sold its Granulite fertilizer to Plaintiffs' neighbor who applied the product in January 2023. Tellingly, Plaintiffs do not allege that the application of Renda's product from the City of Fort Worth (that Renda last distributed from the Fort Worth facility in 2018) caused any of the injuries or damages of which the Plaintiffs complain. Plaintiffs have merely alleged that biosolids from the City of Fort Worth were previously "managed" by Renda. Compl.  Par. 96. This does not satisfy the federal pleading requirements and on this basis alone Renda should be dismissed. There are no allegations to support any claims against Renda. More specifically, there are no allegations that there is any Renda product from 2018 or prior that is available to be tested nor any allegation that any of its product was defective (e. g. contained PFAS).  The Plaintiffs have failed to assert any factual allegations that plausibly state a claim that raises the Plaintiffs' right to relief above the speculative level.  Plaintiffs essentially concede this fact, admitting "[i]t is important to note that different batches of biosolids have different individual PFAS, depending on the municipal and industrial outputs." Par. 95.  This concession is fatal as Plaintiffs have failed to plead any facts connecting Renda's alleged management of biosolids prior to 2018 (which Plaintiffs admit would be uniquely

different) to Plaintiffs' current claims. Furthermore, the Plaintiffs have not adequately alleged any specific facts with respect to Renda but have simply lumped the allegations together for all of the Defendants. This alone is a failure to comply with the pleading requirements. Furthermore, the Plaintiffs have not adequately alleged any specific facts with respect to the alleged product defects in the biosolids that were allegedly managed by Renda prior to 2018. The Plaintiffs' manufacturing defect allegations fail because they provide no facts or details about the manufacture of the biosolids prior to 2018 or how they were defective. As to their marketing defect claim, Plaintiffs failed to identify the allegedly defective warnings or instructions that were given to anyone by Renda or describe how such warnings were defective. Lastly, with respect to their design defect claim, Plaintiffs' allegations fail to adequately allege a safer alternative design, as required under Texas law, a fact that is itself fatal to their claim. Plaintiffs' failure to adequately allege a defect in the biosolids at issue necessitates dismissal of their strict liability claims.

7.    Alternatively, Plaintiffs' negligence claim is premised on the same allegations that the biosolids were defective, and as Plaintiffs have failed to adequately allege a defect in the biosolids, Plaintiffs' negligence claim must fail. Such negligence claims are conclusory and unsupported by any factual claims.

8.    Finally, Renda respectfully seeks dismissal of Plaintiffs' exemplary damages claim. Plaintiffs' claim for exemplary/punitive damages should be dismissed as they have failed to sufficiently plead any facts to demonstrate or even suggest that Renda acted with "malice" or with "specific intent" to harm Plaintiffs. Consequently, such claim is merely a bare recitation of a cause of action supported by mere legal conclusions - exactly the type of claim that the United States Supreme Court deems insufficient to satisfy Rule 8 of the Federal Rules of Civil Procedure.

9.          As such, Renda respectfully requests this Court grant Renda's Motion to Dismiss and dismiss Plaintiffs' Complaint because governmental immunity deprives the Court of subject matter jurisdiction and for Plaintiffs' failure to state a claim upon which relief can be granted.

Dated: April 25, 2025

**TAUNTON, SNYDER & PARISH, P.C.**

*/s/ John P. Abbey*
Matthew    Sean    Parish
State  Bar  No.  4014279
Fed. ID. No. 25140
John P. Abbey
State Bar No. 00789010
Admitted PHV
777 N Eldridge Pkwy, Suite 450
Houston,    Texas    77079
Direct Line – 713-993-2342
Fax – 713-993-2308
mparish@tsplaw.com
*Counsel for Defendant,*
*Renda Environmental, Inc.*

**\*AND\***

ZIEGLER GARDNER BELL, PLLC

*/s/ Gregory N. Ziegler*
Gregory N. Ziegler, Local Counsel
State Bar No. 00791985
Bank of America Plaza
901 Main Street, Suite 4960
Dallas, Texas 75202
Tel – 214-241-4808
Fax – 469-901-5941
gziegler@zgblaw.com
*Local Counsel for Defendant,*
*Renda Environmental, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I, John P. Abbey, hereby certify that on April 25, 2025, the foregoing document was  served

on all counsel of record via the Court's CM/ECF system.

*/s/ John P. Abbey*             

John P. Abbey

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

INDEX OF AUTHORITIES.............................................................................................. iii

     STATUTES ................................................................................................................ iv

     FEDERAL ................................................................................................................... v

     ADMINISTRATIVE LAW ........................................................................................ v

I.     INTRODUCTION .................................................................................................... 1

II.    BACKGROUND....................................................................................................... 2

     A.    Regulatory: Biosolids and biosolids-based fertilizers and soil amendments are subject to extensive federal and state regulations and oversight ..................... 2

     B.    Factual: Fort Worth's biosolids were de-watered to create Renda's soil amendment up to 2018, which a farmer neighboring the named Plaintiffs used. ...................................................................................................................... 3

          1.    Fort Worth's biosolids program. ......................................................... 3
          2.    Plaintiffs' alleged impacts ................................................................... 4

     C.    Procedural: Amended class claims supported removal ................................... 6

III.   STANDARD OF REVIEW....................................................................................... 6

IV.   ARGUMENT ............................................................................................................ 8

     I.     GOVERNMENTAL IMMUNITY DEPRIVES THE COURT OF JURISDICTION OVER PLAINTIFFS' CLAIMS............................................................................... 8

          A.    Biosolids-based soil amendment distribution is an immune governmental function. ...................................................................................................... 9
          B.    Texas law recognizes immunity for government contractors here ................. 9

     II.    THE TEXAS RIGHT TO FARM ACT PRECLUDES THIS LAWSUIT. ............... 11

    A.    Processing, distribution, and application of Renda's Soil Amendment is a protected agricultural operation ...................................................................... 12

    B.    Plaintiffs complain of conditions and circumstances that have existed substantially unchanged for more than one year before filing suit ................ 14

    C.    Plaintiffs' causes of action are the type barred by the Act ............................ 15

III.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) FOR FAILURE TO STATE A CLAIM AGAINST RENDA ................................................................................................... 17

IV.    PLAINTIFFS FAIL TO PLEAD A LEGALLY COGNIZABLE PRODUCTS LIABILITY CLAIM ........................................................................................... 18

    A.    Plaintiffs fail to state a claim for design defect ............................................. 19

        1.    Plaintiffs omit any necessary risk-utility analysis ............................. 19
        2.    Plaintiffs do not identify any safter alternative design ...................... 20
        3.    Plaintiffs lack causation .................................................................... 21

    A.    Plaintiffs fail to state a claim for marketing defect ........................................ 21

V.    PLAINTIFFS DO NOT PLEAD A COGNIZABLE NEGLIGENCE CLAIM ......... 22

    A.    Plaintiffs' claim is subsumed in their product liability theories .............. 22

    B.    Even if it were not subsumed, Plaintiffs fail to adequately plead negligence ..................................................................................................... 23

        1.  Plaintiffs fail to plead that their injuries were foreseeable ...................... 23
        2.  Plaintiffs fail to plead that Renda breached any alleged duty ................. 24
        3.  Plaintiffs fail to plead facts supporting causation ................................... 24

VI.    THE REQUEST FOR EXEMPLARY DAMAGES IS IMPROPER ........................ 25

**V.    CONCLUSION** ......................................................................................................... **25**

**VI.    CERTIFICATE OF SERVICE** ............................................................................. **26**

# INDEX OF AUTHORITIES

Authorities

*Adcock v. Cal-Maine Foods, Inc.*,
  No. 03-22-00418-CV, 2024 WL 201963 (Tex. App.—Austin [3rd Dist.] Jan. 19, 2024, no pet.)
  ..................................................................................................................................... 13, 16

*American Tobacco Co., Inc. v. Grinnell*,
  951 S.W.2d 420 (Tex. 1997) ...................................................................................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................... 3, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................... 3, 7

*Boudreaux v. Swift Transp. Co.*,
  402 F.3d 536 (5th Cir. 2005) ......................................................................................... 24

*Cal-Co Grain Co. v. Whatley*,
  No. 13-05-120-CV, 2006 WL 2439973 (Tex. App.—Corpus Christi-Edinburg Aug. 24, 2006,
  pet. denied)................................................................................................................. 13

*Charles v. K-Pats., Inc.*,
  No. 1:17-CV-339, 2018 WL 9869532 (E.D. Tex. 2018)........................................................ 22

*Cicalese v. Univ. of Texas Med. Branch*,
  924 F.3d 762 (5th Cir. 2019) ......................................................................................... 22

*Collett v. Weyerhaeuser Co.*,
  No. CV 19-11144, 2020 WL 6828613 (E.D. La. Nov. 19, 2020) ........................................... 13

*Doe v. Boys Club of Greater Dall., Inc.*,
  907 S.W.2d 472 (Tex. 1995) ......................................................................................... 25

*Ehler v. LVDVD, L.C.*,
  319 S.W.3d 817 (Tex. App.—El Paso 2010, no pet.)........................................................ 14, 16

*Elmazouni v. Mylan, Inc.*,
  220 F. Supp. 3d 736 (N.D. Tex. 2016) ............................................................................ 20

*Fairfield Ins. Co. v. Stephens Martin Paving, LP*,
  246 S.W.3d 653 (Tex. 2008) ......................................................................................... 25

*Gilbert v. Synagro Cent., LLC*,
  131 A.3d 1 (Pa. 2015) ................................................................................................. 14

*Goodner v. Hyundai Motor Co.*,
  650 F.3d 1034 (5th Cir. 2011) ....................................................................................... 21

*Hall v. Hodgkins*,
  305 F. App'x 224 (5th Cir. 2008) ....................................................................................... 7

*Hendrickson v. Swyers*,
  9 S.W.3d 298 (Tex. App.—San Antonio November 10, 1999)............................................... 13

*Hernandez v. Tokai Corp.*,
  2 S.W.3d 251 (Tex.1999) ............................................................................................. 20

*Holubec v. Brandenberger*,
  111 S.W.3d 32 (Tex. 2003)........................................................................................ 14, 15

*JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*,
  508 S.W.3d 391 (Tex. App.—Fort Worth 2014, no pet.) ..................................................... 23

*Matter of Lewis*,
   316 A.3d 570 (Md. Appellate Ct. 2024) ................................................................ 14
*Murthy v. Abbott*,
   *Lab'ys*, 847 F. Supp. 2d 958 (S.D. Tex. 2012) ...................................................... 7
*Odum v. Frey Spray, LLC*,
   557 P.3d 1283 (Nev. App. 2024) .......................................................................... 14
*Partners & Friends Holding Corp. v. Cottonwood Mins. L.L.C.*,
   653 F. Supp. 3d 344 (N.D. Tex. 2023) ................................................................... 4
*Praesel v. Johnson*,
   967 S.W.2d 391 (Tex. 1998) ................................................................................ 23
*Rodriguez-Escobar v. Goss*,
   392 S.W.3d 109 (Tex. 2013) ................................................................................ 24
*Shaun T. Mian Corp v. Hewlett-Packard Co.*,
   237 S.W.3d 851 (Tex. App. 2007) ....................................................................... 22
*Smith v. Chrysler Grp., L.L.C.*,
   909 F.3d 744 (5th Cir. 2018) ............................................................................... 22
*Summers v. United States*,
   No. 1:13-CV-138-BL, 2018 WL 6696772 (N.D. Tex. Dec. 20, 2018) .................. 24
*Swagger v. Mack Trucks, Inc.*,
   No. 1:20-CV-1206-RP, 2023 WL 2557402 (W.D. Tex. Jan. 6, 2023) ................... 23
*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ............................................................................................. 7
*Thapar v. Zezulka*,
   994 S.W.2d 635 (Tex.1999) ................................................................................ 23
*Timpte Indus., Inc. v. Gish*,
   286 S.W.3d 306 (Tex. 2009) .......................................................................... 19, 20
*Vicwood Meridian P'ship v. Skagit Sand & Gravel*,
   98 P.3d 1277 (Wash. App. 2004) ......................................................................... 14
*White v. Royal Am. Mgmt.*,
   No. 4:23-CV-792-P, 2024 WL 2805926 (N.D. Tex. May 15, 2024) ..................... 24
*Williams v. Gen. Binding Corp.*,
   No. 3:23-CV-00850-K, 2024 WL 628850 (N.D. Tex. Feb. 14, 2024) .......... 7, 19, 23
*Wright v. Ford Motor Co.*,
   508 F.3d 263 (5th Cir. 2007) ............................................................................... 21

STATUTES

TEX. AGRIC. CODE § 251.001 ............................................................................ i, 1, 13
TEX. AGRIC. CODE § 251.002 ............................................................................... 13, 14
TEX. AGRIC. CODE § 251.004 ............................................................................... 16, 17
TEX. AGRIC. CODE § 251.004(a) ................................................................................ 13
TEX. CIV. PRAC. & REM. CODE § 41.003(a) ............................................................... 25
TEX. CIV. PRAC. & REM. CODE § 82.001(2) ............................................................... 22
TEX. CIV. PRAC. & REM. CODE § 82.005(a) ..................................................... 18, 19, 20
TEX. CIV. PRAC. & REM. CODE § 82.005(b) ............................................................... 19
TEX. CIV. PRAC. & REM. CODE § 82.007 ..................................................................... 8

iv

FEDERAL

Fed. R. Civ. P. 12(b)(6) ................................................................................ 7, 8
Fed. R. Evid. 201 ............................................................................................. 3
Tex. R. Civ. P. § 683 ...................................................................................... 17

ADMINISTRATIVE LAW

30 Tex. Admin. Code § 312.7 .......................................................................... 5
30 Tex. Admin. Code §§ 312.1-.150 ............................................................... 2
30 Tex. Admin. Code §§ 312.43, 312.82, & 312.124 .................................... 3
4 Tex. Admin. Code § 65.13 ............................................................................ 3
40 C.F.R. § 503.13, 503.15 ........................................................................ 2, 5
40 C.F.R. §§ 503.8 & 503.13 .......................................................................... 2

## I.    INTRODUCTION

The City of Fort Worth ("the City") owns and operates the Village Creek Water Reclamation Facility ("Village Creek") where it produces biosolids to the highest standards set by the Environmental Protection Agency ("EPA") and Texas Commission on Environmental Quality ("TCEQ"). Synagro constructed and, until recently, operated a drying facility where biosolids were dried to create fertilizer pellets. Prior to Synagro's contract with the City, Renda contracted with the City to "manage the biosolids from its wastewater facilities." Compl. Par. 5. This lawsuit is brought by neighbors of a farmer (Coy Nall) who claim that a one-time application of the pellets in November 2022 somehow damaged their property. This could not have involved Renda since Renda stopped distributing biosolids from Village Creek in 2018. Plaintiffs allege products liability and negligence, asserting that Synagro's Granulite fertilizer contains high levels of per- and polyfluoroalkyl substances ("PFAS"), as well as other constituents, which have allegedly caused them a litany of harms. Since there is no Renda product available from 2018 or earlier to test, the Plaintiffs have not made a similar allegation or claim against Renda and they cannot do so.

Generation of a biosolids soil amendment from wastewater is a core government function and Plaintiffs' claims are barred by Fort Worth's governmental immunity, which Renda shares under governing Texas law. Because immunity attaches, the Court lacks subject matter jurisdiction.

Even if not immunity-barred, the Texas Right to Farm Act, TEX. AGRIC. CODE § 251.001, precludes  private suits like this targeting lawful agricultural operations like the provision of soil amendments or fertilizers to Texas farms and ranches. With one of the nation's strongest right-to-farm acts, Texas prohibits this attack on a long-standing, valuable, and government-approved soil amendment.

Moreover, Plaintiffs' products liability claims are inadequately pled because Plaintiffs refuse to conduct any risk-utility analysis, suggest any feasible design alternative, or offer a theory

1

of causation for harms from Renda's product that was last distributed from the City's facility in 2018. Plaintiffs' negligence claim must be dismissed for similar shortcomings; however, it is subsumed by the products liability claims. Lastly, Plaintiffs plead no facts to support exemplary damages.

## II. BACKGROUND

### A.     Regulatory: Biosolids and biosolids-based fertilizers and soil amendments are subject to extensive federal and state regulations and oversight.

Biosolids are the semi-solid organic residuals of treatment of wastewater from homes, businesses, and institutions. EPA has regulated biosolids and their use on farms under the Clean Water Act since the 1970s and adopted comprehensive regulations in 1993, encouraging the nationwide adoption of this critical recycling practice. Plaintiffs' criticisms of land application of biosolids-derived fertilizer ignore decades of scientific studies, public policy decisions, and agricultural experience demonstrating the high value and low risk of this bulk organic fertilizer.

EPA promulgates and enforces federal biosolids standards, including standards related to constituents of certain pollutants, pathogens, and metals in biosolids. 40 C.F.R. § 503.13, 503.15. EPA specifically limits levels of arsenic, mercury, selenium, molybdenum, zinc, cadmium, copper, lead, and nickel. Compl. ¶ 42; 40 C.F.R. §§ 503.8 & 503.13; See Synagro's Appx., Item No. 1. EPA's Part 503 rules under the Clean Water Act include limitations on application levels, pH composition, cumulative loading rates, and application methodology (surface water buffers, preventing runoff, and uniform application over farm or pastureland). [Renda incorporates herein, as if fully set forth at length, Synagro's Appendix attached to its Motion to Dismiss filed on April 25, 2025].

Implementing EPA's standards, TCEQ manages a comprehensive program for farm use of biosolids, regulating biosolids composition, management practices, application methodology, and

notice and recordkeeping. 30 TEX. ADMIN. CODE §§ 312.1-.150; Synagro's Appx., Item No. 2.  The City is permitted by TCEQ to produce biosolids at Village Creek. Synagro's Appx., Item No. 3 ("TCEQ Permit").[1] On top of EPA's requirements, TCEQ requires that samples be tested for various heavy metals, fecal coliform, enteric viruses, and others. 30 TEX. ADMIN. CODE §§ 312.43, 312.82, & 312.124.

While many constituents in biosolids and associated fertilizers are regulated, no agency has adopted limits for the substances mentioned by Plaintiffs, including PFAS.

The City and Renda were compliant with all applicable regulations at the time Renda distributed its product and Plaintiffs have not alleged otherwise. Furthermore, since Renda last distributed any biosolids from Village Creek in 2018, there are no biosolids available to be tested. For this reason, the Plaintiffs have not alleged and cannot allege that Renda's product failed to comply with any applicable regulations. See Plaintiffs' Complaint. Furthermore, Plaintiffs are unable to make any allegations that Renda's biosolid soil amendment contained any PFAS and Plaintiffs have made no such allegation.

### B.    Factual: Fort Worth's biosolids were de-watered to create Renda's soil amendment up to 2018, which a farmer neighboring the named Plaintiffs used.

#### 1.    Fort Worth's biosolids program.

Fort Worth has operated a biosolids program for over a century because of its core public health and infrastructure obligation to manage wastewater and the resulting biosolids. *See* Synagro's Appx., Item No. 8 at 1.[2] Under its TCEQ Permit and EPA regulations, Fort Worth must

---

[1] Fort Worth Texas Pollutant Discharge Elimination System permit, renewed on January 29, 2024.  Renda requests the Court take judicial notice of this publicly available document. *See Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)).

[2] A printed version of Fort Worth's website wherein it describes its biosolids program.  Fort Worth Water Department, *Biosolids Program*, City of Fort Worth, (last visited Apr. 18, 2025) available at https://www.fortworthtexas.gov/departments /water/wastewater/biosolids.  Renda requests the Court take judicial notice of this government website. *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) ("[W]e fail to see any merit to an objection to the panel taking judicial notice of the state agency's own website").

comply with specific conditions for testing, reporting, managing, marketing, distributing, and applying biosolids. *See* TCEQ Permit at 17-39. Prior to Synagro contracting with Fort Worth, Renda contracted with Fort Worth in 1993 to build and operate a long-term solid dewatering, processing and disposal facility. *See* Appx., Page 1, Item No. 1 (the "Contract" including permits).[3]

At Village Creek, wastewater enters through sewer mains and undergoes screening, filtering, treatment, and dewatering, during which solid residuals are separated from liquid effluent. *See* Synagro's Appx., Item No. 10 at 1. Treated effluent is discharged into the Trinity River. Treated residuals were delivered to the de-watering facility that Renda operated for the City as late as 2018. Fort Worth ensures that Village Creek complies with all federal, state or local laws, regulations, and permits, as required by both its TCEQ Permit and former TNRCC Permits, and the Contract (including permits). See Appx., Page1, item No. 1 at *Bates* numbers RENDA 000016, 30, 32, 37,67 and 96. As of September 1, 2022, the TNRCC changed its name to TCEQ. Fort Worth recently sued the U.S. Department of Defense and multiple PFAS manufacturers to recover costs the City contends were caused by PFAS, including costs related to its wastewater treatment and biosolids program. Compl. ¶ 83.

## 2. Plaintiffs' alleged impacts.

Synagro sold Granulite fertilizer to Plaintiffs' neighbor, which he picked up from the drying facility and applied to his farm, one time. Compl. ¶ 85. Plaintiffs allege that this single application led to the migration of constituents from Synagro's Granulite fertilizer onto their land. Compl. ¶¶ 85-91. Tellingly, Plaintiffs do not allege that the application of Renda's product from the City of Fort Worth (that Renda last distributed from the Fort Worth facility in 2018) caused any of the

---

[3] Plaintiffs incorporate the contract between the City of Fort Worth and Renda. Compl. ¶¶ 5 "[C]ourts may consider the terms of a contract attached in a motion to dismiss where the contract was referred to in the complaint and the contract is central to the plaintiff's claims." *Partners & Friends Holding Corp. v. Cottonwood Mins. L.L.C.*, 653 F. Supp. 3d 344, 348 (N.D. Tex. 2023), *aff'd*, No. 23-10192, 2023 WL 8649880 (5th Cir. Dec. 14, 2023).

injuries or damages of which the Plaintiffs complain. Plaintiffs have merely alleged that biosolids from the City of Fort Worth were previously "managed" by Renda. Compl. ¶ 96.

Plaintiffs attribute a range of human and animal health effects, water contamination, property value loss, and other costs to constituents in Synagro's Granulite fertilizer. Compl. ¶¶ 8, 98-110. At the same time, Plaintiffs explain the ubiquity of PFAS in American households and the environment,[4] frequently asserting that PFAS are persistent, mobile, and "biomagnify." Compl. ¶¶ 38-39, 55-57, 65, 68, & 70. Plaintiffs also disclose another source of PFAS on their property—a vast 17-county aquifer overlaying an even larger aquifer serving *millions* of Texas households, including Plaintiffs. Compl. ¶ 91.

The many sources of PFAS compounds may explain the mismatch between Plaintiffs' samples of PFAS on their properties and those they claim are in Synagro's Granulite fertilizer: Plaintiffs identify 32 different types of PFAS in their soil and water, Compl. ¶ 87, but only 27 types of PFAS in their Granulite fertilizer sample, Compl. ¶ 93.[5] Plaintiffs try to explain this inconsistency with the conclusion that different batches of biosolids contain different PFAS, Compl. ¶ 95, while contradictorily asserting that their properties' PFAS came from a single application of Granulite fertilizer, from a batch Plaintiffs never tested (that did not come from Renda). Compl. ¶¶ 85, 98, 104, 110. In any event, there are no samples of Renda's biosolid soil amendment from 2018 or before and, therefore, Plaintiffs have made no allegations that Renda's soil amendment was even involved in the Plaintiffs' alleged contamination much less that Renda's product contained any PFAS.

TCEQ further evaluated the sample results for these properties and concluded that "all the

---

[4] Plaintiffs acknowledge that, "PFAS are environmentally persistent," "leach into the groundwater," "can cause . . . harm long after their release," "are ubiquitous in consumer products," "migrate great distances," "resist biodegradation," and "cause extensive groundwater contamination." Compl. ¶¶ 44-45, 126.

[5] In their prior version of the Complaint, Plaintiffs provided more information and noted eleven of the PFAS alleged to be in Synagro's Granulite adversely affect human health, ECF 1-11, ¶ 88, and only eight of those were found in "high" concentrations on the property, *id.* ¶ 89. Plaintiffs removed these telling sample results on amendment after Synagro noted this conflict.

measured PFAS concentrations are below TCEQ's comparison values and therefore do not represent levels that would harm human health or the environment." Synagro's Appx., Item No. 6 at 3. TCEQ compared the values to their "Protective Concentration Levels," "the concentration of a chemical of concern which can remain within the source medium and not result in levels which exceed the applicable human health risk-based exposure limit or ecological protective concentration level at the point of exposure for that exposure pathway." 30 TEX. ADMIN. CODE § 350.4 (68).

Aside from PFAS, Plaintiffs generally allege that biosolids contain heavy metals, estrogen and endocrine disrupters, and pharmaceutically active compounds. Compl. ¶¶ 42-47. However, Plaintiffs do not claim that Renda's product contained any such compounds and they fail to specify how these "other toxins" may have affected them or their properties.

### C. Procedural: Amended class claims supported removal.

This case began in Maryland state court, where it was dismissed for *forum non conveniens*. Plaintiffs refiled in the 249th District Court of Johnson County, Texas on November 15, 2024. ECF No. 1-4. Plaintiffs later amended adding class claims on January 23, 2025. ECF No. 1-11. Defendants removed this action to this Court on February 21, 2025. ECF Nos. 1 and 14.

Now on the fifth iteration of their complaint, Plaintiffs assert claims for strict products liability and negligence, and demand both injunctive relief and monetary damages, including exemplary damages. Despite pleading on behalf of a class, Plaintiffs do not state how any unnamed Plaintiffs are affected beyond mere recitations of the federal rules. Compl. ¶¶ 131- 197. Renda will thus oppose class certification, which is rarely appropriate for environmental tort claims.

### III. STANDARD OF REVIEW

A complaint must be dismissed if the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). When facially attacked, dismissal "is warranted if the allegations in a plaintiff's

6

complaint, taken as true, together with any undisputed facts establish that the district court lacks jurisdiction." *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir.1992); *see also S. Jet, Inc. v. Childs*, No. 3:08-CV-0680-K, 2008 WL 4642948, at *1 (N.D. Tex. Oct. 18, 2008) (Kinkeade, J.).

A complaint should also be dismissed if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Plaintiffs must state a claim that is plausible on its face, not merely possible or conceivable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And a claimant must include sufficient factual allegations to allow a court to reasonably infer liability. *Id.* at 678-79. In turn, a complaint's factual allegations may also ultimately negate a cause of action. *Id.* at 666. In analyzing the sufficiency of a claim, federal courts should disregard conclusory statements and determine whether the remaining factual allegations plausibly state a claim that raises the plaintiffs' right to relief above the speculative level. *Id.* at 678-79; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

Courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008); *see also Murthy v. Abbott Lab'ys*, 847 F. Supp. 2d 958, 973 (S.D. Tex. 2012) (dismissing products claims based on TEX. CIV. PRAC. & REM. CODE § 82.007). Rule 12(b)(6) also allows dismissal of improper relief, like exemplary damages, when supported by only threadbare recitals. *Williams v. Gen. Binding Corp.,* No. 3:23-CV-00850-K, 2024 WL 628850, at *5 (N.D. Tex. Feb. 14, 2024) (Kinkeade, J.).

## IV.    ARGUMENT

Plaintiffs' suit is barred outright, first by governmental immunity, which protects municipal biosolids programs, and also by the Right to Farm Act, which prohibits lawsuits against agricultural operations. Should the Court reach the negligence and products liability claims, it will further find them inadequately pled, by failing to articulate any facts against Renda, any defect, any duty not observed, any safer alternative not employed, or any causal link between Renda's actions and Plaintiffs' illusory harms. Plaintiffs' negligence claim, as a matter of law, is subsumed into the products claim. Last, the exemplary damages demand lacks a factual basis and must be dismissed.

## I.    GOVERNMENTAL IMMUNITY DEPRIVES THE COURT OF JURISDICTION OVER PLAINTIFFS' CLAIMS.

The burden of proof for a Rule 12(b)(1) motion to dismiss lies with the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Thus, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. "A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013). "[G]overnmental immunity from suit defeats a trial court's jurisdiction." *Id*.

Since Fort Worth has immunity for any harm caused by its biosolids, Plaintiffs mistakenly sued the City's former contractor, Renda, thinking they could avoid the immunity issue. This sleight of hand can't overcome Renda's derivative immunity in this heavily regulated facet of public infrastructure.  Fort Worth, not Renda, was permitted by TCEQ/TNRCC to produce biosolids. Fort Worth, not Renda, is responsible for prescreening and pre-treatment of wastewater at Village Creek. Plaintiffs' claims against Fort Worth, which they attempt to cast against Renda, are barred under basic principles of derivative governmental immunity.

### A.    Biosolids-based soil amendment distribution is an immune governmental function.

Fort Worth enjoys governmental immunity when it is "acting as the State's agent and performing governmental functions for the public benefit." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016). Texas recognizes a non-exclusive list of 36 governmental functions, which include "sanitary and storm sewers," "waterworks," and "water and sewer service." TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9), (11), and (32). Biosolids production and recycling to farmland is a core wastewater service that Fort Worth, like many thousands of cities nationwide, performs every day.

Texas courts have held that operations of biosolids and wastewater reuse programs are immune governmental functions. *City of Merkel v. Copeland*, 561 S.W.3d 720, 723 (Tex. App.—Eastland 2018, pet. denied) (sale of treated wastewater to golf course under TCEQ permit); *Davis v. City of Lubbock*, No. 07-16-00080-CV, 2018 WL 736344, at *4 (Tex. App.—Amarillo Feb. 6, 2018, no pet.) (use of treated wastewater to irrigate crops and sale of baled hay related to TCEQ permit.); *San Jacinto River Auth. v. Simmons*, 167 S.W.3d 603, 610 (Tex.App. — Beaumont 2005, no pet.) (operation of a biosolids drying facility where an employee slipped). Governmental immunity attaches and flows through to a contractor performing a routine service.

### B.    Texas law recognizes immunity for government contractors here.

The Texas Supreme Court recognizes that contractors may be entitled to governmental immunity protections when liability for a claim is derivative to one that is immunity barred (*e.g.*, contractor aided tort committed by a governmental entity), or when the contractor was merely implementing the government's decisions (*i.e.*, the tortious action was effectively attributed to the government). *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020) (barring claims against lottery ticket distributor relating back to Texas Lottery Commission's printing of misleading and

deceptive instructions); *see also Foster v. Teacher Retirement System*, 273 S.W.3d 883, 890 (Tex.App.–Austin 2008, no pet.) (extending immunity to retirement system's insurer that "provides administrative services to facilitate the provision of health care.")

Here, with respect to Renda, the allegedly wrongful act Plaintiffs point to is that prior to Synagro's contract with the City of Fort Worth, Renda contracted with the City to "manage" the biosolids from the City's wastewater facilities. Compl. at par. 5 and 96. This allegation is entirely based on the wastewater residuals coming directly from the Fort Worth treatment plant. To the extent Plaintiffs are suggesting there is a link from the composition of Renda's soil amendment back to the feedstock delivered by Village Creek, Renda has nothing to do with that. Plaintiffs' claims against Renda thus stem directly from conduct attributable to Fort Worth.

Any liability Renda could have for wastewater treatment (which Plaintiffs contend should have undergone more pre-treatment or deployed additional technology to bind metals, Compl. ¶ 161) is derivative of Fort Worth's. *See, e.g., Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, Nat. Ass'n*, No. CIV.A. H-04-2833, 2006 WL 870683, at *6 (S.D. Tex. Mar. 31, 2006) (derivative liability involves "wrongful conduct both by the person who is derivatively liable and the actor whose wrongful conduct was the direct cause of injury to another"). Where liability derives from an otherwise immune tort, immunity extends. *Nettles*, 606 S.W.3d at 739. Even if Renda were a manufacturer and Fort Worth's biosolids were a "component" of Renda's soil amendment, it is still Fort Worth who would be subject to liability. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 333 (5th Cir. 1998) ("[W]hen raw materials are contaminated or otherwise defective within the meaning of § 2(a), the seller of the raw materials is subject to liability for harm caused by such defects.").

Even if shared misconduct were alleged, Renda was clearly acting on behalf of Fort Worth under the Contract. The Contract between Renda and Fort Worth specifically provides as follows:

10

> The CONTRACTOR [Renda] represents the OWNER [City of Fort Worth] through this Contract and shall conduct its affairs with the public likewise. The CONTRACTOR may be called on in public meetings to answer questions and work with the public.

See Appx., Page 1, item No. 1 at *Bates* number RENDA 000385.

The rationale for extending immunity to governmental contractors is simple.

> Where the government hires a contractor . . . and specifies the manner in which the task is to be performed, and the contractor is later haled into court to answer for a harm that was caused by the contractor's compliance with the government's specifications, the contractor is entitled to the same immunity the government would enjoy, because the contractor is, under those circumstances, effectively acting as an organ of government, without independent discretion.

*Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 126 (Tex. 2015) (declining to extend immunity to tollway construction company when suit challenged independently negligent design for signs and traffic layouts, instead of the decision to build the tollway or the mere fact of its existence). Here, Fort Worth decided to use biosolids for land application and contracted with Renda to construct a facility to process and dispose of biosolids. The contract unequivocally states that Renda represents the City of Fort Worth and as such is an "organ" of the City. Renda is entitled to derivative immunity as an "organ" of the City. *See Brown & Gay,* 461 S.W.3d at 124-125. Plaintiffs' attempt to regulate Fort Worth by suing its contractors is ineffectual. Based on the facts alleged, Renda shares Fort Worth's immunity and should be dismissed from this suit.

## II.    THE TEXAS RIGHT TO FARM ACT PRECLUDES THIS LAWSUIT.

The Right to Farm Act bars tort lawsuits against farming, ranching, and all supporting agricultural activities. Organic bulk fertilizers like manure and biosolids have always been central and essential to improving soil and fertilizing crops and are at the heart of what the Act shields from tort litigation. The Legislature has long recognized the paramount need to support Texas farms, adopting the Right to Farm Act (and recently clarifying its intended, and longstanding, broad scope)

11

to prohibit private litigation from threatening to restrain lawful agricultural operations such as Renda's. The Legislature passed the Right to Farm Act over forty years ago to "reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations may be legally threatened, subject to suit, regulated, or otherwise declared to be a nuisance." TEX. AGRIC. CODE § 251.001.

Under the Right to Farm Act, "[n]o nuisance action or other action to restrain an agricultural operation may be brought against an agricultural operation that has lawfully been in operation and substantially unchanged for one year or more prior to the date on which the action is brought." TEX. AGRIC. CODE § 251.004(a). Here, Plaintiffs' factual allegations invoke the Right to Farm Act. It's application here to bar this large putative class action that will undermine and perhaps eliminate use of this soil amendment is necessary and appropriate.

### A.    Processing, distribution, and application of Renda's Soil Amendment is a protected agricultural operation.

Suits are barred if they inhibit "agricultural operations," which include, but are expressly not limited to: "[C]ultivating the soil; producing crops for human food, animal feed, planting seed, or fiber; floriculture; viticulture; horticulture; raising or keeping livestock or poultry; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure." TEX. AGRIC. CODE § 251.002. Biosolids plainly come under this definition, consistent with the national trend of right-to-farm law protection.

First, Plaintiffs establish that Renda's production and distribution of its soil amendment constitutes a covered agricultural operation. Renda turns biosolids—organic matter derived from wastewater treatment—into a biosolids soil amendment. Compl. ¶¶ 32-33. Plaintiffs state that the biosolids from Fort Worth are applied to farms, including their neighbor's farm, as a fertilizer and soil conditioner to improve soil health, and was used by their neighbor as intended. Compl. ¶¶

1,138, 154 and 179. Renda's production and distribution for land application of its soil amendment is thus used in producing crops and cultivating the soil and is shielded from suit under the Right to Farm Act. TEX. AGRIC. CODE § 251.002.

Plaintiffs may argue that Renda was not itself producing crops or cultivating soil, but Texas courts hold that activities that are "part of the process" for other listed agricultural operations receive protection under the Right to Farm Act. *See, e.g.*, *Cal-Co Grain Co. v. Whatley*, No. 13-05-120-CV, 2006 WL 2439973, at *5 (Tex. App.—Corpus Christi-Edinburg Aug. 24, 2006, pet. denied) (mem. op.) (grain storage facility was "part of the process" of feeding livestock and safeguarded by the Right to Farm Act); *Adcock v. Cal-Maine Foods, Inc.*, No. 03-22-00418-CV, 2024 WL 201963, at *1 (Tex. App.—Austin [3rd Dist.] Jan. 19, 2024, no pet.) (mem. op.) (applying Right to Farm Act to a chickenfeed mill).

Determining whether an agricultural operation falls within the Act's protections is a legal determination for the Court. *See Hendrickson v. Swyers*, 9 S.W.3d 298, 300 (Tex. App.—San Antonio 1999, pet. denied) (employing statutory construction to determine that the Right to Farm Act is intended to protect "activities that produce food," and thus fighting cocks are not protected). Here, Renda's work is in the center of the statute's shield – preparing and distributing a biosolids soil amendment used to grow crops and improve soils.

Texas's expansive Right to Farm Act is consistent with laws other states have adopted to protect agriculture from ruinous litigation by neighbors and anti-agriculture interest groups. Courts regularly protect all facets of agricultural production, including basic farming operations like compost, fertilizer, and pesticides. *See Collett v. Weyerhaeuser Co.*, No. CV 19-11144, 2020 WL 6828613 (E.D. La. Nov. 19, 2020) (Louisiana's farming protection law barred a suit against timber companies related to their application of chemicals close to their property line); *Odum v. Frey Spray, LLC*, 557 P.3d 1283 (Nev. App. 2024) (protecting pesticide application under Nevada's law);

*Vicwood Meridian P'ship v. Skagit Sand & Gravel*, 98 P.3d 1277 (Wash. App. 2004) (applying Washington's protections to composting operation at mushroom farm).

In fact, courts in several states have confirmed that their similar right-to-farm laws protect biosolids operations as integral, agricultural functions, including the Pennsylvania Supreme Court in a case involving Synagro. *See Gilbert v. Synagro Cent., LLC*, 634 Pa. 651, 131 A.3d 1 (2015) (dismissing tort claims because Synagro's biosolids distribution and application was a "normal agricultural operation" under Pennsylvania's right to farm law); *Matter of Lewis*, 316 A.3d 570 (Md. Appellate Ct. 2024), *cert. granted*, 322 A.3d 1257 (Md. 2024) (upholding agricultural board's conclusion that "the application and stockpiling of" biosolids at farm "was a generally accepted agricultural practice," and thus protected from tort claims under Maryland right to farm laws). This is not surprising, given that bulk organic fertilizers have been integral to farming for millennia and that biosolids are recognized and regulated by EPA and the states.

### B. Plaintiffs complain of conditions and circumstances that have existed substantially unchanged for more than one year before filing suit.

The Right to Farm Act prevents lawsuits as a statute of repose that bars suit when a lawful agricultural operation existed for over a year before the suit and its conditions have remained unchanged. *Holubec v. Brandenberger*, 111 S.W.3d 32, 38 (Tex. 2003). The defendant need not prove the exact start date—only that the operation began more than a year before the plaintiff filed suit. *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 821 (Tex. App.—El Paso 2010, no pet.).

Here, Plaintiffs only plead their neighbor had Granulite fertilizer delivered in November 2022 that he tilled in January 2023. Compl. ¶ 85. Renda had been operating in the Fort Worth area from 1993 to 2018, well over a year prior to Plaintiffs' suit, and further, this lawsuit was not filed until November 15, 2024, over five years since Renda had applied any soil amendment to the property in question. The Synagro fertilizer complained of and tested by Plaintiffs has nothing to do

with Renda. Under these facts, Plaintiffs waited too long to file suit, clearly establishing this element, and triggering the statute of repose, no matter when Plaintiffs discovered any alleged injuries. Compl. ¶¶ 26, 92; TEX. AGRIC. CODE § 251.004; *see also Holubec*, 111 S.W.3d at 38 (under the Right to Farm Act "it does not matter when the complaining party discovers the conditions or circumstances constituting the basis for the nuisance action.").[6]

### C.      Plaintiffs' causes of action are the type barred by the Act.

For the final element, Plaintiffs have stopped using the term "nuisance" in their live complaint but have plead a nuisance-like action. Under Texas law, the "nuisance" "does not refer to the 'wrongful act' or to the 'resulting damages,' but only to the legal injury—the interference with the use and enjoyment of property—that may result from the wrongful act and result in the compensable damages." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner,* 505 S.W.3d 580, 595 (Tex. 2016) ("nuisance" is "a legal injury that may support a cause of action, but it is not itself the cause of action or the conduct that is necessary to support the cause of action").

Plaintiffs' complaint is bound in the alleged interference with use and enjoyment of their property. For their negligence and products liability claims, Plaintiffs plead that their alleged injury is that their "land and water supplies were and continue to be polluted with PFAS and other toxic chemicals," causing exposure to humans and animals and costs for remediation and market value loss. Compl. ¶ 138 (negligence); ¶ 165 (products liability). Further, Plaintiffs define their purported class to include only those "who as a result of Defendants' biosolids have suffered a diminution in value of their property." Compl. ¶ 111.

The Right to Farm Act applies broadly to all causes of action that target nuisance-like injuries from agriculture. *See generally*, *Ehler*, 319 S.W.3d at 824 (barring trespass claims because allowing plaintiffs to simply plead a nuisance as another action would "eviscerate the statute and

---

[6] The Right to Farm Act clarifies that while *private parties* cannot restrain agricultural operations, *governmental* actions, including enforcement by TCEQ, are not similarly barred. *Id.*

deny [a defendant] the protection intended by the Legislature"). Particularly here, where Plaintiffs base their products liability and negligence claims "on the same alleged conditions and circumstances creating a nuisance," courts do not hesitate to apply the statute of repose. *Adcock*, 2024 WL 201963, at *4 (finding that the Right to Farm Act "applies to trespass actions based on the same alleged conditions and circumstances creating a nuisance").

In 2023, the Legislature codified these holdings, clarifying that the Right to Farm Act prohibits not only claims for nuisance injuries but any "action to restrain an agricultural operation." TEX. AGRIC. CODE § 251.004. Plaintiffs' request for injunctive relief is precisely the type of restraint the Legislature saw fit to prevent. *See* TEX. R. CIV. P. § 683 (every order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail … *the act or acts sought to be restrained.*") (emphasis added). Plaintiffs expressly ask the Court to force Renda to return the land to its condition prior to any "pollution or contamination," which they contend originates from the land application of the biosolids at their neighbor's property. ECF No. 1-11, ¶¶ 9 & 80. Thus, if Renda is required to remove the soil amendment, Plaintiffs' neighbor may not continue to apply biosolids, nor could the neighbors of any of the numerous unnamed, putative class members or their neighbors.[7] Furthermore, exemplary damages are a restraint: "Plaintiffs request an award of exemplary and punitive damages in an amount reasonable, appropriate, and sufficient to punish these Defendants *and deter them from ever committing the same or similar acts.*" Compl. ¶ 141 (emphasis added); *see also Ehler*, 319 S.W.3d at 824 (applying the Right to Farm Act to bar damages).

The Right to Farm Act bars Plaintiffs' claims. The Court need not look outside the Plaintiffs' pleadings to determine that this case should be dismissed; the facts as pled by the Plaintiffs, taken as true, demonstrate that Plaintiffs' claims are extinguished.

---

[7] Plaintiffs further fail to state plausible class allegations to satisfy Rule 12, and Renda reserves all rights to subsequently challenge the class allegations in future motion practice.

**III.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) FOR FAILURE TO STATE A CLAIM AGAINST RENDA**

Alternatively, Plaintiffs have failed to allege sufficient facts to state a plausible claim against Renda. A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007) (*quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007)).*  The jurisprudence instructs that the nature of such an inquiry should look to whether a claim has facial plausibility: such facial plausibility is present where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."     *Iqbal, 556 U.S. at 663. "*The plausibility standard is not akin to a 'probability  requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully*." Id. (quoting Twombly, 550 U.S. at 556).*  The jurisprudence states that determining whether this  standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, 556 U.S. at 679.*

The Plaintiffs' Complaint is largely devoid of any factual allegations with respect to Renda. Although there are specific allegations against Synagro and references to testing that has been performed on Synagro's product, the Plaintiffs' Complaint contains no specific allegations against Renda or its biosolids. The Plaintiffs have only alleged that one load of Synagro's Granulite Fertilizer delivered in November 2022 and mixed into the soil in mid-January 2023, is the alleged culprit. See Complaint at ¶ 85 Renda stopped distributing any of its product from the City of Fort Worth in 2018. There are no allegations that any of Renda's products have been tested nor that any are available for testing to determine what they contained at the time they were applied prior to 2018. There are no allegations that Renda's product contained PFAS and Plaintiff can never make such an allegation. With respect to Renda, Plaintiffs generally allege that biosolids from the City of Fort Worth were previously "managed" by Renda. Plaintiff alleges that these

17

biosolids were applied to lands adjacent to Plaintiffs' properties by the same neighboring farmer. In a conclusory fashion and without referencing any facts, Plaintiffs state that, like Synagro, Renda knew or should have known that its biosolid product contained PFAS and other toxic chemicals. Plaintiffs contend that the defective condition existed at the time each product left the control of Synagro and Renda. Compl. Par. 147. However, there are no factual allegations in the Plaintiffs' Complaint to support the statement that Renda's product was in a defective condition when it left its control. On this basis alone, the Plaintiffs have failed to state a claim against Renda. Unlike the allegations against Synagro, there are no allegations that any biosolids sold by Renda to the farmer exist nor are there any allegations that any biosolids sold by Renda have been tested for PFAS or anything else. Beginning on page 29 of the Plaintiffs' Complaint, Plaintiffs improperly and incorrectly refer to Synagro and Renda collectively as the "Defendants" when they are clearly separate, distinct and independent parties. For this reason alone, the Plaintiffs' pleadings are deficient and fail to satisfy the legal standards required by federal courts.

Here, due to the lack of factual allegations brought specifically against Renda as to the when, where, how and what Renda is alleged to have done wrong, Plaintiffs have not stated a plausible claim against Renda. Therefore, Renda's Motion to Dismiss should be granted and Plaintiffs' claims against Renda dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Should Renda's Motion to Dismiss not be granted in its entirety for failure to satisfy the pleading requirements as set forth by the United States Supreme Court in *Iqbal/Twombly*, the following claims should be dismissed against Renda pursuant to Rule 12(b)(6).

## IV.    PLAINTIFFS FAIL TO PLEAD A LEGALLY COGNIZABLE PRODUCTS LIABILITY CLAIM.

Plaintiffs' claims further fail because Texas law only recognizes claims for products liability for a seller who, among other requirements, "sells any product in a defective condition

unreasonably dangerous to the user or consumer or to his property." *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997). Plaintiffs make no such cognizable claim.

### A.    Plaintiffs fail to state a claim for design defect.

Plaintiffs argue that Renda's product was "defective because it contained PFAS and other toxic chemicals," but fail to plead facts to support a design defect claim. Compl. ¶ 146. Under TEX. CIV. PRAC. & REM. CODE § 82.005(a), to recover for a claim of defective design, a plaintiff must plead and ultimately prove that: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). Plaintiffs do not meet their pleading burden on any element.

### 1.    Plaintiffs omit any necessary risk-utility analysis.

A "design is generally defective only if it yields a product that is unreasonably dangerous because its utility to its user and the public is less than the risks created by its use, considering both the gravity and likelihood of the risks." *Williams*, 2024 WL 628850, at *2. To plead unreasonable danger, claimants must engage a five-factor risk-utility analysis. *Grinnell*, 951 S.W.2d at 432. But Plaintiffs fail to do so, omitting the product's utility, possible substitutes, associated costs, and what Renda—as opposed to Fort Worth—could have done to eliminate any danger.  At most, Plaintiffs offer conclusory statements regarding an alleged danger, *e.g.*, Compl. ¶ 151, empty assertions that alleged danger is "unreasonable," and conclusory and readily contradicted allegations that Renda violated applicable state and federal requirements. Yet, Plaintiffs provide no plausible explanation to support these alleged shortcomings. Compl. ¶ 151(i)-(j). Such unsupported assertions are fatal. *See Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 741 (N.D. Tex. 2016) (dismissing when Plaintiffs did not plead a "specific manufacturing defect").

### 2. Plaintiffs do not identify any safer alternative design.

Plaintiffs alleged alternatives are not alternatives and, based on the facts alleged, are not feasible. A "safer alternative design" is a design that in "reasonable probability":

> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM. CODE § 82.005(b). By law, Plaintiffs must show "there was a reasonable alternative design that, at a reasonable cost, would have reduced [the] foreseeable risk of harm." *Timpte Indus., Inc.*, 286 S.W.3d at 314 ; TEX. CIV. PRAC. & REM. CODE § 82.005(a). This is a prerequisite to liability. *Hernandez*, 2 S.W.3d at 258. Plaintiffs fail to address any of these requirements. Compl. ¶¶ 162-63*; see also Franklin v. Apple Inc*., 569 F. Supp. 3d 465, 477 (E.D. Tex. 2021) (dismissing design defect claim for failure to allege "specific factual allegations describing the purported safer alternative design").

Four of Plaintiffs' "alternative designs" (manure, compost, biofertilizers, and chemical fertilizers) are different products altogether. Compl. ¶ 161(a)-(d); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig*., 888 F.3d 753, 766 (5th Cir. 2018) (a "substantially different product" cannot constitute a safer alternative design). Plaintiffs baldly assert that another alternative would be for Fort Worth to require dischargers to remove the PFAS from their wastewater before it enters Village Creek. Compl. ¶ 161(e). This regulatory reform is, of course, not within Renda's power. The same goes for requiring Village Creek to use chelators to "bind or remove heavy metals."[8] Compl. ¶ 161(f). This is another alternative that falls outside of Renda's control. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998) ("[A] claimant

---

[8] And even if Fort Worth bound metals differently, Plaintiffs do not plead any actual harms derived from metals nor do they allege the Granulite fertilizer did not comply with the established regulatory limits for metals. *See* 30 TEX. ADMIN. CODE §§ 312.43, 312.82, & 312.124 & 40 C.F.R. § 503.13, 503.15.

must establish, among other things, that the *defendant* could have provided a safer alternative design.") (emphasis added). Separately, Plaintiffs fail to state a design defect, because their proposed alternatives would not impact their alleged injury—Plaintiffs tell the Court that PFAS *cannot* be removed through treatment, *see* Compl. ¶¶ 4, 8, 36, 40, 66, and further argue that treatment causes some PFAS to biodegrade into other PFAS, *see* Compl. ¶ 40.

### 3. Plaintiffs lack causation.

Plaintiffs must demonstrate that their alleged defect caused their injury, meaning it was "a substantial factor in bringing about an injury, and without which the injury would not have occurred." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1044 (5th Cir. 2011); TEX. CIV. PRAC. & REM. CODE § 82.005(a). Even assuming *arguendo* that Renda's soil amendment contained PFAS, there are no samples available to determine whether it had PFAS. Furthermore, Plaintiffs fail to even allege how **Renda's product** may be involved nor how any particular PFAS caused their injuries.

Plaintiffs' allegations belabor the ubiquity of PFAS in the environment, that PFAS are environmentally persistent, highly mobile, and "biomagnify." Compl. ¶¶ 38-39, 57, 68, & 70. Plaintiffs simply plead themselves out of causation.

### A. Plaintiffs fail to state a claim for marketing defect.

A marketing defect, occurs when "a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use." *Wright v. Ford Motor Co*., 508 F.3d 263, 274 (5th Cir. 2007). Although Plaintiffs mention Synagro's label and embed the label into the Complaint, Plaintiffs do not mention any Renda product labels nor how the labels fail to warn the user. Compl. ¶¶ 28, 175-77. Plaintiffs claim Renda's instructions for use are insufficient but fail to explain how. They argue a user might have avoided runoff if the label were different. Their assertion is conclusory.

21

Plaintiffs also conclude with no factual support that the labels of the Defendants collectively fail to comply with 40 C.F.R. § 503.14(e).[9] Compl. ¶ 177. It is improper to lump the Defendants together and Plaintiffs have yet again failed to state how Renda's label was deficient in any respect.

Just as Plaintiffs fail to articulate any cognizable theory of causation for their design defect claim, so too do they fail for the marketing defect claim. *See* Section IV.A.3. Plaintiffs' marketing defect claim is "simply a recitation of . . . elements and legal jargon" requiring dismissal. *Charles v. K-Pats., Inc*., No. 1:17-CV-339, 2018 WL 9869532 at *6 (E.D. Tex. 2018).

## V.    PLAINTIFFS DO NOT PLEAD A COGNIZABLE NEGLIGENCE CLAIM.

### A.    Plaintiffs' claim is subsumed in their product liability theories.

Plaintiffs' negligence claim is merely a repetition of their strict products liability theory under a different title. In Texas, when plaintiffs allege no negligence other than producing and selling a defective product, their "negligence theories are encompassed and subsumed in their defective product theories." *See Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 750 (5th Cir. 2018). Under the statute a "products liability action" is

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, *negligence*, . . . or any other theory or combination of theories."

TEX. CIV. PRAC. & REM. CODE § 82.001(2) (emphasis added). Plaintiffs' negligence claim will "stand or fall on the outcome of their products liability claims." *Shaun T. Mian Corp.* 237 S.W.3d at 857; *Williams*, 2024 WL 628850, at *2 ("If she fails to sufficiently plead that the [product] was defective for purposes of the strict liability [claim], then the negligence-based [claim] fails, too.").

Each of the alleged negligence elements are based solely on products liability theory. The alleged duty arises from the development and marketing of the product. Compl. ¶ 132 (e.g., "design . . . manufacture . . . marketing . . . labeling"). And the alleged misconduct is that Defendants made

---

[9] Plaintiffs wrongly cite 40 **U.S.C.** § 503.14(e) but intended to cite 40 **C.F.R.** § 503.14(e).

the biosolids fertilizer/soil amendment without satisfactory testing, studies, warning, reporting, representations, labeling, or protective measures. Compl. ¶ 135. The entirety of the negligent acts or omissions alleged deal in the product and its marketing. Compl. ¶¶ 141, 151, 183. Indeed, even the alleged injuries are identical between negligence and products liability. *Compare* ¶¶ 192, 165 *with* 138; ¶¶ 195, 169 *with* 141. The negligence claim exclusively centers on the same alleged duty, conduct, knowledge, and harm that underlie the products liability claims, and must be dismissed.[10]

**B.      Even if it were not subsumed, Plaintiffs fail to adequately plead negligence.**

As with other jurisdictions, in Texas, a "negligence claim has three elements: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). The threshold inquiry is duty: if there is no duty, liability for negligence cannot exist. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999).

**1.   Plaintiffs fail to plead that their injuries were foreseeable.**

To determine that a duty exists, Texas courts "consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants." *JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 417 (Tex. App.—Fort Worth 2014, no pet.) ("foreseeability is the foremost and dominant consideration"). The test for foreseeability is "whether a person of ordinary intelligence would have anticipated the danger his negligence creates." *Id.*

Plaintiffs allege Renda's product contains PFAS or "other toxins," causing foreseeable harm to nearby properties. Compl. ¶ 136. However, they fail to explain how Renda could have foreseen such risks. Compl. ¶ 66. Regulators have long known about PFAS but have not restricted use in biosolids. Compl. ¶¶ 64, 66. Nonetheless, the alleged PFAS levels on Plaintiffs' properties meet

---

[10] Even if product liability claims survive, negligence claims should be dismissed where they merely restate the same theory. *E.g., Swagger v. Mack Trucks, Inc.,* No. 1:20-CV-1206-RP, 2023 WL 2557402 (W.D. Tex. Jan. 6, 2023) (dismissing duplicative negligence claims).

established human health and environmental thresholds. Synagro's Appx., Item No. 6 at 3. It's unreasonable to claim Renda should have foreseen harm where regulators still do not. *Lorenz v. Celotex Corp.*, 896 F.2d 148, 150-51 (5th Cir. 1990) ("[C]ompliance with government safety standards is strong and substantial evidence that a product is not defective.")

### 2. Plaintiffs fail to plead that Renda breached any alleged duty.

Plaintiffs must plead how Renda acted outside ordinary care, *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 541 (5th Cir. 2005), but they merely assert negligence without facts. Compl. ¶ 134. Their claim relies on PFAS, a constituent ubiquitous in American life, but never explain how its presence shows negligence. Further, TCEQ specifically found "no violations" concerning the relevant land application of biosolids. Synagro's Appx., Item No. 4. Despite pleading that Johnson County "opened an investigation" in 2022, Plaintiffs allege no further action. Compl. ¶ 86. Failing to indicate that Renda acted less than "an ordinarily prudent person exercising ordinary care" under these circumstances, *see Boudreaux*, 402 F.3d at 541, the Court must dismiss.[11]

### 3. Plaintiffs fail to plead facts supporting causation.

"For a negligent act to be deemed a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm." *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). Cause-in-fact is not possibility. *Summers v. United States*, No. 1:13-CV-138-BL, 2018 WL 6696772, at *6 (N.D. Tex. Dec. 20, 2018) (no speculation or conjecture). It does not exist "if the defendant's negligence did no more than furnish a condition which made the injury possible." *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Plaintiffs have alleged no facts that Renda's product was involved much less that it was a "substantial factor" in causing the alleged damages.

---

[11] *White v. Royal Am. Mgmt.*, No. 4:23-CV-792-P, 2024 WL 2805926 at *6 (N.D. Tex. May 15, 2024), Rpt. and Rec. adopted, 2024 WL 2805314 (N.D. Tex. May 31, 2024) (dismissing where plaintiff "fail[ed] to allege what duty [was] owed her and how [it was] breached").

## VI.    THE REQUEST FOR EXEMPLARY DAMAGES IS IMPROPER.

Plaintiffs are not entitled to exemplary damages, Compl. ¶¶ 135, 151, 175, 195, & 198, which may be awarded "only if the claimant proves . . . (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE § 41.003(a). Plaintiffs fail to reach the high bar for exemplary damages; again, they fail to state a prerequisite negligence claim. Plaintiffs offer no facts to show "extreme" risk or "conscious indifference," to support a gross negligence theory, *see id.* § 41.001, just the recital that Renda acted with "deliberate disregard." Compl. ¶¶ 141, 169.[12]

### CONCLUSION

Plaintiffs attempt at policymaking-by-lawsuit should end at the pleadings stage. Importantly, dismissal of this action does not deprive Plaintiffs of a remedy – Federal and state laws and regulations, particularly TCEQ, can consider Plaintiffs' desire to ban this agricultural practice. Immunity bars this attempt to secure damages for and injunctive relief regarding Fort Worth's wastewater treatment and management. In addition, the Legislature made the policy decision to protect farming and fertilizer when it adopted the Right to Farm Act decades ago. Moreover, Plaintiffs' template tort claims cannot plausibly satisfy the well-established pleading requirements of products and negligence law. Plaintiffs' suit should be dismissed.

---

[12] Plaintiffs' group pleading further forecloses exemplary damages. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 667 (Tex. 2008) (requiring individual allegations).

Respectfully submitted,

TAUNTON, SNYDER & PARISH, P.C.

*/s/ John P. Abbey*
Matthew Sean Parish
State Bar No. 4014279
Fed. ID. No. 25140
John P. Abbey
Admitted Pro Hac Vice
State Bar No. 00789010
Fed. ID. No. 10812
777 N Eldridge Pkwy, Suite 450
Houston, Texas 77079
Direct Line: (713) 993-2342
Fax: (713) 993-2308
mparish@tsplaw.com
*Counsel for Defendant,*
*Renda Environmental, Inc.*

*AND*

ZIEGLER GARDNER BELL, PLLC

*/s/ Gregory N. Ziegler*
Gregory N. Ziegler, Local Counsel
State Bar No. 00791985
Bank of America Plaza
901 Main Street, Suite 4960
Dallas, Texas 75202
Tel – 214-241-4808
Fax – 469-901-5941
gziegler@zgblaw.com
*Local Counsel for Defendant,*
*Renda Environmental, Inc.*

CERTIFICATE OF SERVICE

I, Matthew Parish, hereby certify that on April 25, 2025, the foregoing document was served on all counsel of record via the Court's CM/ECF system.

*/s/John P. Abbey*
John P. Abbey

26