## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### (Dallas Division)

| | | |
|---|---|---|
| **ROBIN ALESSI,** *et. al.* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civil No. 3:25-CV-0445-K** |
| | § | |
| **SYNAGRO TECHNOLOGIES, INC.,** *et. al.* | § | |
| | § | |
| *Defendants.* | § | |

## SYNAGRO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND RULE 12(B)(6) AND BRIEF IN SUPPORT THEREOF

Defendants Synagro Technologies, Inc. and Synagro of Texas-CDR, Inc. (collectively, "Synagro") move to dismiss Plaintiffs' Second Amended Complaint—Class Action, ECF No. 36 ("Compl.") under Federal Rule of Civil Procedure 12(b)(1) because governmental immunity deprives the Court of subject matter jurisdiction to hear Plaintiffs' claims, and under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' claims are barred by the Texas Right to Farm Act, TEX. AGRIC. CODE § 251.001, and because Plaintiffs have inadequately pled their products liability and negligence claims. In support, Synagro attaches their Brief and Appendix of documents.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    A.    Regulatory: Biosolids are subject to extensive federal and state regulations and oversight. ............................................................................................................. 2

    B.    Factual: Fort Worth's biosolids are dried to create Synagro's Granulite fertilizer, which a farmer neighboring the Plaintiffs used. ............................................................ 3

        1.    Fort Worth's biosolids program. .......................................................................... 3

        2.    Plaintiffs' alleged impacts. .................................................................................. 5

    C.    Procedural: Amended class claims supported removal. .................................................. 6

STANDARD OF REVIEW ................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    Governmental immunity deprives the Court of jurisdiction................................................. 8

    A.    Biosolids-based fertilizer distribution is an immune governmental function. ................. 9

    B.    Texas law recognizes immunity for government contractors like Synagro. ................... 9

II.    The Texas Right to Farm Act precludes this lawsuit. ..................................................... 12

    A.    Processing, distribution, and application of Synagro's Granulite fertilizer is a protected agricultural operation. ................................................................................................. 13

    B.    Plaintiffs complain of conditions and circumstances that have existed substantially unchanged for more than one year before filing suit. ........................................... 15

    C.    Plaintiffs' causes of action are the type barred by the Act. ........................................... 16

III.    Plaintiffs fail to plead a products liability claim. ........................................................... 18

    A.    Plaintiffs fail to state a claim for design defect. ......................................................... 18

        1.    Plaintiffs omit any necessary risk-utility analysis. ............................................... 18

        2.    Plaintiffs do not identify any safer alternative design. ........................................... 19

        3.    Plaintiffs lack causation. ..................................................................................... 20

    B.    Plaintiffs fail to state a claim for marketing defect. ...................................................... 21

IV.    Plaintiffs do not plead a cognizable negligence claim. .................................................... 22

    A.    Plaintiffs' claim is subsumed in their product liability theories. ................................... 22

    B.    Even if it were not subsumed, Plaintiffs fail to adequately plead negligence............... 23

V.    The request for exemplary damages is improper. .......................................................... 25

CONCLUSION ................................................................................................................... 25

## TABLE OF AUTHORITIES

Cases ...............................................................................................................................Pages(s)

*Adcock v. Cal-Maine Foods, Inc.*,
  No. 03-22-00418-CV, 2024 WL 201963 (Tex. App.—Austin [3rd Dist.] Jan. 19, 2024, no pet.)
  ................................................................................................................................. 14, 16
*Am. Tobacco Co., Inc. v. Grinnell*,
  951 S.W.2d 420 (Tex. 1997) ......................................................................................... 18
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................... 7
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................... 7
*Boudreaux v. Swift Transp. Co.*,
  402 F.3d 536 (5th Cir. 2005) ......................................................................................... 24
*Brown & Gay Eng'g, Inc. v. Olivares*,
  461 S.W.3d 117 (Tex. 2015) ..........................................................................................11
*Cal-Co Grain Co. v. Whatley*,
  No. 13-05-120-CV, 2006 WL 2439973 (Tex. App.—Corpus Christi-Edinburg Aug. 24, 2006,
  pet. denied)..................................................................................................................... 13
*Charles v. K-Pats., Inc.*,
  No. 1:17-CV-339, 2018 WL 9869532 (E.D. Tex. 2018).......................................................... 22
*Cicalese v. Univ. of Texas Med. Branch*,
  924 F.3d 762 (5th Cir. 2019) ........................................................................................... 7
*Cimino v. Raymark Indus., Inc.*,
  151 F.3d 297 (5th Cir. 1998) ..........................................................................................11
*City of Merkel v. Copeland*,
  561 S.W.3d 720 (Tex. App.—Eastland 2018, pet. denied) ............................................ 9
*Collett v. Weyerhaeuser Co.*,
  No. CV 19-11144, 2020 WL 6828613 (E.D. La. Nov. 19, 2020) ................................. 14
*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*,
  505 S.W.3d 580 (Tex. 2016) ........................................................................................... 16
*Cuevas v. Westerman*,
  No. 1:14-CV-133, 2016 WL 11529760 (S.D. Tex. Nov. 10, 2016)................................ 24
*Davis v. City of Lubbock*,
  No. 07-16-00080-CV, 2018 WL 736344 (Tex. App.—Amarillo Feb. 6, 2018, no pet.)............ 9
*Doe v. Boys Club of Greater Dall., Inc.*,
  907 S.W.2d 472 (Tex. 1995) ........................................................................................... 24
*Doyle v. Combined Sys., Inc.*,
  No. 3:22-CV-01536-K, 2023 WL 5945857 (N.D. Tex. Sept. 11, 2023) ........................ 21
*Ehler v. LVDVD, L.C.*,
  319 S.W.3d 817 (Tex. App.—El Paso 2010, no pet.)...................................... 15, 16, 17
*Elmazouni v. Mylan, Inc.*,
  220 F. Supp. 3d 736 (N.D. Tex. 2016) .......................................................................... 18
*Fairfield Ins. Co. v. Stephens Martin Paving, LP*,
  246 S.W.3d 653 (Tex. 2008) ........................................................................................... 25

Fort Worth's. *See, e.g., Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, Nat. Ass'n*, No. CIV.A. H-04-2833,
  2006 WL 870683 (S.D. Tex. Mar. 31, 2006) ................................................................... 10
*Foster v. Teacher Retirement System*,
  273 S.W.3d 883 (Tex.App.–Austin 2008, no pet.) ......................................................... 10
*Franklin v. Apple Inc.*,
  569 F. Supp. 3d 465 (E.D. Tex. 2021) ........................................................................... 19
*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) .......................................................................................... 2
*Gilbert v. Synagro Cent., LLC*,
  131 A.3d 1 (2015) ........................................................................................................... 14
*Goodner v. Hyundai Motor Co.*,
  650 F.3d 1034 (5th Cir. 2011) ....................................................................................... 20
*Hall v. Hodgkins*,
  305 F. App'x 224 (5th Cir. 2008) .................................................................................... 8
*Hendrickson v. Swyers*,
  9 S.W.3d 298 (Tex. App.—San Antonio 1999, pet. denied) ......................................... 14
*Hernandez v. Tokai Corp.,*,
  2 S.W.3d 251 (Tex. 1999) ............................................................................................... 19
*Hobbs v. Hawkins*,
  968 F.2d 471 (5th Cir.1992) ............................................................................................ 7
*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
  143 F.3d 1006 (5th Cir. 1998) ........................................................................................ 7
*Holubec v. Brandenberger*,
  111 S.W.3d 32 (Tex. 2003) ............................................................................................. 15
*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
  888 F.3d 753 (5th Cir. 2018) .......................................................................................... 19
*JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*,
  508 S.W.3d 391 (Tex. App.—Fort Worth 2014, no pet.) ............................................... 23
*Lorenz v. Celotex Corp.*,
  896 F.2d 148 (5th Cir. 1990) .......................................................................................... 24
*Matter of Lewis*,
  316 A.3d 570 (2024) ....................................................................................................... 15
*Morgan v. Plano Indep. Sch. Dist.*,
  724 F.3d 579 (5th Cir. 2013) .......................................................................................... 8
*Murthy v. Abbott*,
  *Lab'ys*, 847 F. Supp. 2d 958 (S.D. Tex. 2012) ............................................................. 8
*Nettles v. GTECH Corp.*,
  606 S.W.3d 726 (Tex. 2020) .......................................................................................... 10
*Odum v. Frey Spray, LLC*,
  557 P.3d 1283 (Nev. App. 2024) .................................................................................... 14
*Partners & Friends Holding Corp. v. Cottonwood Mins L.L.C.*,
  653 F. Supp. 3d 344 (N.D. Tex. 2023) ........................................................................... 4
*Praesel v. Johnson*,
  967 S.W.2d 391 (Tex. 1998) ........................................................................................... 23

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ............................................................................ 8
*Rodriguez-Escobar v. Goss,*
    392 S.W.3d 109 (Tex. 2013) ........................................................................... 24
*S. Jet, Inc. v. Childs,*
    No. 3:08-CV-0680-K, 2008 WL 4642948 (N.D. Tex. Oct. 18, 2008) .................. 7
*San Jacinto River Auth. v. Simmons,*
    167 S.W.3d 603 (Tex.App. — Beaumont 2005, no pet.) ..................................... 9
*Shaun T. Mian Corp. v. Hewlett-Packard Co.,*
    237 S.W.3d 851 (Tex. App.—Dallas 2007, pet. denied) .................................. 22
*Smith v. Chrysler Grp., L.L.C.,*
    909 F.3d 744 (5th Cir. 2018) .......................................................................... 22
*Swagger v. Mack Trucks, Inc.,*
    No. 1:20-CV-1206-RP, 2023 WL 2557402 (W.D. Tex. Jan. 6, 2023) ............... 23
*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007) ........................................................................................ 7
*Thapar v. Zezulka,*
    994 S.W.2d 635 (Tex.1999) ............................................................................ 23
*Timpte Indus., Inc. v. Gish,*
    286 S.W.3d 306 (Tex. 2009) ..................................................................... 18, 19
*Uniroyal Goodrich Tire Co. v. Martinez,*
    977 S.W.2d 328 (Tex. 1998) ........................................................................... 20
*Vicwood Meridian P'ship v. Skagit Sand & Gravel,*
    98 P.3d 1277 (Wash. App. 2004) .................................................................... 14
*Wasson Interests, Ltd. v. City of Jacksonville,*
    489 S.W.3d 427 (Tex. 2016) ............................................................................ 9
*White v. Royal Am. Mgmt.,*
    No. 4:23-CV-792-P, 2024 WL 2805926 (N.D. Tex. May 15, 2024) .................. 24
*Williams v. Gen. Binding Corp.,*
    No. 3:23-CV-00850-K, 2024 WL 628850 (N.D. Tex. Feb. 14, 2024) ..... 8, 18, 21, 22
*Wright v. Ford Motor Co.,*
    508 F.3d 263 (5th Cir. 2007) .......................................................................... 21

Statutes

TEX. AGRIC. CODE § 251.001 ................................................................................ 1, 12
TEX. AGRIC. CODE § 251.002 ...................................................................................... 13
TEX. AGRIC. CODE § 251.004(a) ................................................................................. 13
TEX. AGRIC. CODE § 251.004 ................................................................................ 15, 17
TEX. CIV. PRAC. & REM. CODE § 82.005(b) ................................................................ 19
TEX. CIV. PRAC. & REM. CODE § 41.003(a) ............................................................... 25
TEX. CIV. PRAC. & REM. CODE § 82.001(2) ............................................................... 22
TEX. CIV. PRAC. & REM. CODE § 82.005(a) ...................................................... 18, 19, 20
TEX. CIV. PRAC. & REM. CODE § 82.007 ...................................................................... 8
TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9), (11), and (32) .................................. 9

Rules

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 7
Federal Rule of Civil Procedure 12(b)(6) ............................................................. 7
Tex. R. Civ. P. § 683 ........................................................................................ 17

Regulations

4 Tex. Admin. Code § 65.13 ............................................................................... 3
30 Tex. Admin. Code § 312.7 ............................................................................. 5
30 Tex. Admin. Code § 350.4 (68) ...................................................................... 6
30 Tex. Admin. Code §§ 312.1-.150 .................................................................... 2
30 Tex. Admin. Code §§ 312.43, 312.82, & 312.124 ........................................ 3, 19
40 C.F.R. § 503.13, 503.15 .......................................................................... 2, 5, 19
40 C.F.R. § 503.14(e) ....................................................................................... 21
40 C.F.R. §§ 503.8 & 503.13 .............................................................................. 2

**INTRODUCTION**

Plaintiffs' Complaint contravenes governmental immunity protections, attacks essential and highly regulated farming activities, and fails to properly plead any viable cause of action. Plaintiffs' suit should be dismissed.

The City of Fort Worth owns and operates the Village Creek Water Reclamation Facility ("Village Creek") where it produces biosolids to the highest standards set by the Environmental Protection Agency ("EPA") and Texas Commission on Environmental Quality ("TCEQ"). Synagro constructed and, until recently, operated a drying facility where biosolids were dried to create fertilizer pellets, meeting EPA and TCEQ standards. Farmers picked up the pellets, which Synagro registered as its Granulite fertilizer, for use as a fertilizer and soil amendment. Compl. ¶ 28. This lawsuit is brought by neighbors of a farmer who claim that a one-time application of the pellets on his farm somehow damaged their nearby properties. Plaintiffs allege products liability and negligence, asserting that the Granulite fertilizer contains high levels of per- and polyfluoroalkyl substances ("PFAS"), as well as other constituents like heavy metals, estrogen and endocrine disrupters, and pharmaceutical compounds, which have allegedly caused them a litany of harms.

Generation of biosolids fertilizer from wastewater is a core government function and Plaintiffs' claims are barred by Fort Worth's governmental immunity, which Synagro shares under governing Texas law. Because immunity attaches, the Court lacks subject matter jurisdiction.

Even if not immunity-barred, the Texas Right to Farm Act, TEX. AGRIC. CODE § 251.001, precludes private suits like this targeting lawful agricultural operations, including the provision of fertilizer to Texas farms and ranches. With one of the nation's strongest right-to-farm acts, Texas prohibits tort suits seeking to damage a long-standing, government-approved fertilizer.

Moreover, Plaintiffs' products liability claims fail because Plaintiffs refuse to conduct any risk-utility analysis, suggest any feasible design alternative, or offer a theory of causation for harms

1

from the one-time use of Synagro's Granulite fertilizer. Plaintiffs' negligence claim must be dismissed for similar shortcomings; however, it is subsumed by the products liability claims. Lastly, Plaintiffs plead no facts to support exemplary damages.

## BACKGROUND

**A.    Regulatory: Biosolids are subject to extensive federal and state regulations and oversight.**

Biosolids are the semi-solid organic residuals of treatment of wastewater from homes, businesses, and institutions. EPA has regulated biosolids and their use on farms under the Clean Water Act since the 1970s and adopted comprehensive regulations in 1993, encouraging the nationwide adoption of this critical recycling practice. Plaintiffs' criticisms of land application of biosolids-derived fertilizer ignore decades of scientific studies, public policy decisions, and agricultural experience demonstrating the high value and low risk of this bulk organic fertilizer.

EPA promulgates and enforces federal biosolids standards under the Clean Water Act, including limits on constituents of certain pollutants, pathogens, and metals in biosolids. 40 C.F.R. § 503.13, 503.15. EPA specifically limits levels of arsenic, mercury, selenium, molybdenum, zinc, cadmium, copper, lead, and nickel. Compl. ¶ 42; 40 C.F.R. §§ 503.8 & 503.13; Appx., Item No. 1. EPA regulates application levels, pH composition, cumulative loading rates, and application methodology (like surface water buffers, preventing runoff, and uniform application over land).

Implementing EPA's standards, TCEQ manages a comprehensive program for farm use of biosolids, regulating biosolids composition, management practices, application methodology, and notice and recordkeeping. 30 TEX. ADMIN. CODE §§ 312.1-.150; Appx., Item No. 2. Fort Worth is permitted by TCEQ to produce biosolids at Village Creek. Appx., Item No. 3 ("TCEQ Permit").[1]

---

[1] Fort Worth Texas Pollutant Discharge Elimination System permit, renewed on January 29, 2024. *See Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011). Synagro requests the Court

On top of EPA's requirements, TCEQ requires that samples be tested for various heavy metals, fecal coliform, enteric viruses, and others. 30 TEX. ADMIN. CODE §§ 312.43, 312.82, & 312.124.

While many constituents in biosolids and associated fertilizers are regulated, no agency has adopted limits for the substances mentioned by Plaintiffs, including non-regulated metals like titanium and antimony, estrogen and endocrine disruptors, pharmaceutical compounds, or PFAS.

The Texas Feed and Fertilizer Control Service's Office of the Texas State Chemist ("State Chemist") requires biosolids-based fertilizers be registered, labeled, and tested for compliance with pollutants, pathogens, and vector standards. 4 TEX. ADMIN. CODE § 65.13; Appx., Item No. 4. Synagro maintains its label with the Texas Feed and Fertilizer Control Service. Compl. ¶ 28

Fort Worth and Synagro are compliant with all applicable regulations. In fact, TCEQ's investigation of the 2022-2023 Synagro land application event at issue yielded *no violations*. *See* Appx., Item No. 5.[2] When TCEQ reviewed the samples referenced in the Complaint, it determined that the PFAS levels on Plaintiffs' properties did not "present a risk of harm to human health or the environment." Appx., Item No. 6 at 3.[3]

### B. Factual: Fort Worth's biosolids are dried to create Synagro's Granulite fertilizer, which a farmer neighboring the Plaintiffs used.

#### 1. Fort Worth's biosolids program.

Fort Worth has operated a biosolids program for over a century because of its core public health and infrastructure obligation to manage wastewater and the resulting biosolids. *See* Appx.,

---

take judicial notice of this and other government document referenced below under Federal Rule of Evidence 201.

[2] The investigation report concluded: "No violations resulted from this investigation" and "no violations are being alleged." The report notes that only products meeting TCEQ's standards are applied to farmland. Synagro requests the Court take judicial notice of this report.

[3] A Johnson County Constable transmitted to the State Chemist a report that the Constable's Office described as "TCEQ's official position on Johnson County's biosolids contamination case."

Item No. 7 at 1.[4] Under its TCEQ Permit and EPA regulations, Fort Worth must comply with specific conditions for testing, reporting, managing, marketing, distributing, and applying biosolids. *See* TCEQ Permit at 17-39. In response to rising program costs and an increase in odor complaints, Fort Worth developed a Biosolids Master Plan to evaluate the best methods for biosolids processing and reuse. With financing from the Texas Water Development Board via an EPA grant, Fort Worth paid Synagro to build and put into operation Fort Worth's drum dryer to pelletize biosolids. *See* Appx., Item No. 7 at 1.; Appx., Item No. 8 (the "Contract");[5] Compl. ¶ 26. Synagro celebrated the grand opening of the drying facility on December 1, 2022. Compl. ¶ 92.

Wastewater enters Village Creek through sewer mains and undergoes screening, filtering, treatment, and dewatering, during which solid residuals are separated from liquid effluent. *See* Appx., Item No. 9 at 1.[6] Treated effluent is discharged into the Trinity River. Treated residuals are delivered to the drying facility that Synagro operated. *Id.* at 4. Fort Worth ensures that Village Creek complies with all federal, state or local laws, regulations, and permits, as required both by its TCEQ Permit and the Contract. Appx. Item Nos. 2 and 8 at 0036. Feedstock from Village Creek delivered to the drying facility that contains toxic substances, hazardous materials, metals exceeding standards, or that otherwise "adversely impacts" Synagro's performance is deemed non-

---

[4] A printed version of Fort Worth's website wherein it describes its biosolids program. Fort Worth Water Department, *Biosolids Program*, City of Fort Worth, (last visited Apr. 24, 2025) available at https://www.fortworthtexas.gov/departments/water/wastewater/biosolids.

[5] Plaintiffs incorporate the contract between the City of Fort Worth and Synagro. Compl. ¶¶ 26, 27 "[C]ourts may consider the terms of a contract attached in a motion to dismiss where the contract was referred to in the complaint and the contract is central to the plaintiff's claims." *Partners & Friends Holding Corp. v. Cottonwood Mins. L.L.C.*, 653 F. Supp. 3d 344, 348 (N.D. Tex. 2023), *aff'd*, No. 23-10192, 2023 WL 8649880 (5th Cir. Dec. 14, 2023).

[6] A printed version of Fort Worth's website wherein it describes its wastewater treatment process. Fort Worth Water Department, *Wastewater Treatment*, City of Fort Worth, (last visited Apr. 24, 2025) available at https://www.fortworthtexas.gov/departments/water/wastewater/treatment.

compliant. *Id*. at 9. Fort Worth recently sued the U.S. Department of Defense and multiple PFAS manufacturers to recover costs the City contends were caused by PFAS, including costs related to its wastewater treatment and biosolids program. Compl. ¶ 83.

Synagro constructed and, until recently, operated the thermal drum dryer connected to Village Creek. At the drying facility, the biosolids were sampled and tested for all constituents that EPA and TCEQ regulate (like certain metals and pathogens). Compl. ¶ 4; *see also* 30 TEX. ADMIN. CODE § 312.7, 40 C.F.R. § 503.13. The drying facility produced about 26,500 dry tons of fertilizer each year, which Synagro made available to farmers and ranchers in nearby counties to pick up and apply to their properties as a cost-effective, organic alternative to commercial chemical fertilizers. Compl. ¶¶ 26, 28. The Fort Worth City Council voted to end the contractual relationship with Synagro in April 2025, taking over management of the drying facility. Compl. ¶ 12.

### 2.    Plaintiffs' alleged impacts.

Synagro sold Granulite fertilizer to Plaintiffs' neighbor, which he picked up from the drying facility and applied to his farm, one time in 2023. Compl. ¶ 85. Plaintiffs allege that this application led to the migration of constituents from the Granulite fertilizer onto their land. Compl. ¶¶ 85-91.

Plaintiffs attribute a range of human and animal health effects, water contamination, property value loss, and other costs to constituents in the Granulite fertilizer. Compl. ¶¶ 8, 98-110. At the same time, Plaintiffs explain the ubiquity of PFAS in American households and the environment,[7] frequently asserting that PFAS are persistent, mobile, and "biomagnify." Compl. ¶¶ 38-39, 55-57, 65, 68, & 70. Plaintiffs also disclose another source of PFAS on their property: a 17-county aquifer overlaying an even larger aquifer serving *millions* of Texans. Compl. ¶ 91.

---

[7] Plaintiffs acknowledge that, "PFAS are environmentally persistent," "leach into the groundwater," "can cause . . . harm long after their release," "are ubiquitous in consumer products," "migrate great distances," "resist biodegradation," and "cause extensive groundwater contamination." Compl. ¶¶ 44-45, 126.

The many sources of PFAS compounds may explain the mismatch between Plaintiffs' samples of PFAS on their properties and those they claim are in Synagro's Granulite fertilizer: Plaintiffs identify 32 different types of PFAS in their soil and water, Compl. ¶ 87, but only 27 types of PFAS in their Granulite fertilizer sample, Compl. ¶ 93.[8] Plaintiffs try to explain this inconsistency with the conclusion that different batches of biosolids contain different PFAS, Compl. ¶ 95, while conflictingly asserting that their properties' PFAS came from a single application of Granulite fertilizer, from a batch Plaintiffs never tested. Compl. ¶¶ 85, 98, 104, 110.

TCEQ further evaluated the sample results for these properties and concluded that "all the measured PFAS concentrations are below TCEQ's comparison values and therefore do not represent levels that would harm human health or the environment." Appx., Item No. 6 at 3. TCEQ compared the values to their "Protective Concentration Levels," "the concentration of a chemical of concern which can remain within the source medium and not result in levels which exceed the applicable human health risk-based exposure limit or ecological protective concentration level at the point of exposure for that exposure pathway." 30 TEX. ADMIN. CODE § 350.4 (68).

Aside from PFAS, Plaintiffs generally allege that biosolids contain heavy metals, estrogen and endocrine disrupters, and pharmaceutically active compounds. Compl. ¶¶ 42-47. Plaintiffs fail to specify how these "other toxins" may have affected them or their properties.

## C.    Procedural: Amended class claims supported removal.

Plaintiffs filed this case in the 249th District Court of Johnson County, Texas on November 15, 2024. ECF No. 1-4. Plaintiffs later amended, adding class claims on January 23, 2025. ECF No. 1-11. Defendants removed this action to this Court on February 21, 2025. ECF Nos. 1 and 14.

---

[8] In their prior version of the Complaint, Plaintiffs provided more information and noted eleven of the PFAS alleged to be in Granulite adversely affect human health, ECF 1-11, ¶ 88, and only eight of those were found in "high" concentrations on the property, *Id.* ¶ 89. Plaintiffs removed these telling sample results on amendment after Synagro noted this conflict.

Plaintiffs claim products liability and negligence, and demand both injunctive relief and damages, including exemplary damages. Despite pleading on behalf of a class, Plaintiffs do not state how any unnamed Plaintiffs are actually affected. Compl. ¶¶ 131- 197. Synagro will thus oppose class certification, which is rarely appropriate for environmental tort claims.

## STANDARD OF REVIEW

A complaint must be dismissed if the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). When facially attacked, dismissal "is warranted if the allegations in a plaintiff's complaint, taken as true, together with any undisputed facts establish that the district court lacks jurisdiction." *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir.1992); *see also S. Jet, Inc. v. Childs*, No. 3:08-CV-0680-K, 2008 WL 4642948, at *1 (N.D. Tex. Oct. 18, 2008) (Kinkeade, J.).

A complaint should also be dismissed if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Plaintiffs must state a claim that is plausible on its face, not merely possible or conceivable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And a claimant must include sufficient factual allegations to allow a court to reasonably infer liability. *Id.* at 678-79. In turn, a complaint's factual allegations may also ultimately negate a cause of action. *Id.* at 666. In analyzing the sufficiency of a claim, federal courts should disregard conclusory statements and determine whether the remaining factual allegations plausibly state a claim that raises the plaintiffs' right to relief above the speculative level. *Id.* at 678-79; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

Courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "If, based on the facts

pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008); *see also Murthy v. Abbott Lab'ys*, 847 F. Supp. 2d 958, 973 (S.D. Tex. 2012) (dismissing products claims based on Tex. Civ. Prac. & Rem. Code § 82.007). Rule 12(b)(6) also allows dismissal of improper relief, like exemplary damages, when supported by only threadbare recitals. *Williams v. Gen. Binding Corp.,* No. 3:23-CV-00850-K, 2024 WL 628850, at *5 (N.D. Tex. Feb. 14, 2024) (Kinkeade, J.).

## ARGUMENT

Plaintiffs' suit is barred outright, first by governmental immunity, which protects municipal biosolids programs, and also by the Right to Farm Act, which prohibits lawsuits against agricultural operations. Should the Court reach the products liability claims, they do not state a claim because they fail to articulate any defect, any duty not observed, any safer alternative not employed, or any causal link between Synagro's actions and Plaintiffs' alleged harms. Plaintiffs' negligence claim, as a matter of law, is subsumed into the products claim and fails for the same reasons. Last, the exemplary damages demand lacks a factual basis and should be dismissed.

## I.    Governmental immunity deprives the Court of jurisdiction.

"The burden of proof for a Rule 12(b)(1) motion to dismiss lies with the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Thus, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. "A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 n.4 (5th Cir. 2013). "[G]overnmental immunity from suit defeats a trial court's jurisdiction." *Id* at 582.

Fort Worth has immunity for tort claims targeting its biosolids, so Plaintiffs sued the City's contractor, Synagro. This sleight of hand cannot overcome Synagro's derivative immunity in this heavily regulated facet of public infrastructure. Fort Worth, not Synagro, was permitted by TCEQ

to produce biosolids. Fort Worth, not Synagro, is responsible for processing and managing wastewater at Village Creek. And Fort Worth, not Synagro, had final approval for the design and operation of its drying facility. Plaintiffs' claims against Fort Worth, which they attempt to cast against Synagro, are barred under basic principles of derivative governmental immunity.

### A.    Biosolids-based fertilizer distribution is an immune governmental function.

Fort Worth enjoys governmental immunity when it is "acting as the State's agent and performing governmental functions for public benefit." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016). Texas recognizes a non-exclusive list of 36 governmental functions, which include "sanitary and storm sewers," "waterworks," and "water and sewer service." TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9), (11), and (32). Biosolids production and recycling to farmland is a core wastewater service that Fort Worth, like many thousands of cities nationwide, performs every day.

Texas courts have held that operations of biosolids and wastewater reuse programs are immune governmental functions. *City of Merkel v. Copeland*, 561 S.W.3d 720, 723 (Tex. App.—Eastland 2018, pet. denied) (sale of treated wastewater to golf course under TCEQ permit); *Davis v. City of Lubbock*, No. 07-16-00080-CV, 2018 WL 736344, at *4 (Tex. App.—Amarillo Feb. 6, 2018, no pet.) (use of treated wastewater to irrigate crops and sale of baled hay related to TCEQ permit.); *San Jacinto River Auth. v. Simmons*, 167 S.W.3d 603, 610 (Tex.App. — Beaumont 2005, no pet.) (operation of a biosolids drying facility where an employee slipped). Governmental immunity attaches and flows through to a contractor performing a routine, core public service.

### B.    Texas law recognizes immunity for government contractors like Synagro.

The Texas Supreme Court recognizes that contractors may be entitled to governmental immunity protections when liability for a claim derivative to one that is immunity barred (*e.g.*, contractor aided tort committed by a governmental entity), or when the contractor was merely

implementing the government's decisions (*i.e.*, the tortious action was effectively attributed to the government). *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020) (barring claims against lottery ticket distributor relating back to Texas Lottery Commission's printing of misleading and deceptive instructions); *see also Foster v. Teacher Retirement System*, 273 S.W.3d 883, 890 (Tex.App.–Austin 2008, no pet.) (extending immunity to retirement system's insurer that "provides administrative services to facilitate the provision of health care.")

Here, the allegedly wrongful acts Plaintiffs point to—dealing with designing, or "formulating" the biosolids, or making the biosolids available for agricultural use —are entirely based on the thousands of tons of wastewater residuals coming directly and only from the Fort Worth treatment plant. Plaintiffs correctly link the composition of the Granulite-fertilizer back to the feedstock delivered by Village Creek, which Fort Worth manages, and with which Synagro had no involvement. *See* Compl. ¶¶ 4, 32. Plaintiffs acknowledge Synagro does not "make" biosolids, but merely dries and distributes what is received from Fort Worth's Village Creek wastewater treatment process. Compl. ¶ 4; Appx, Item No. 9 at 0033 ("Company shall, collect, receive, and treat feedstock"). Plaintiffs' claims against Synagro thus stem directly from Fort Worth's conduct.

Any liability Synagro could have for wastewater treatment (which Plaintiffs contend should have undergone more pre-treatment or deployed additional technology to bind metals, Compl. ¶ 161) is derivative of Fort Worth's. *See, e.g., Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, Nat. Ass'n*, No. CIV.A. H-04-2833, 2006 WL 870683, at *6 (S.D. Tex. Mar. 31, 2006) (derivative liability involves "wrongful conduct both by the person who is derivatively liable and the actor whose wrongful conduct was the direct cause of injury to another"). Where liability derives from an otherwise immune tort, immunity extends. *Nettles*, 606 S.W.3d at 739. Even if Synagro were a manufacturer and Fort Worth's biosolids were a "component" of the Granulite

fertilizer, it is still Fort Worth who would be subject to liability. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 333 (5th Cir. 1998) (seller of the raw materials is subject to liability for harm caused by contaminated or otherwise defective raw materials).

Even if shared misconduct were alleged, Synagro was under Fort Worth's control under the Contract. The rationale for extending immunity to governmental contractors is simple.

> Where the government hires a contractor . . . and specifies the manner in which the task is to be performed, and the contractor is later haled into court to answer for a harm that was caused by the contractor's compliance with the government's specifications, the contractor is entitled to the same immunity the government would enjoy, because the contractor is, under those circumstances, effectively acting as an organ of government, without independent discretion.

*Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125 n.9 (Tex. 2015) (declining to extend immunity to engineering firm when suit challenged negligent design for signs and traffic layouts causing traffic collision, not the decision to build the tollway or the mere fact of its existence).

Here, Fort Worth chose to land apply biosolids to area farms and bought a thermal dryer to improve the process. The Contract gave Synagro no discretion over the design or process, whether biosolids would be distributed, whether thermal drying was utilized, whether or how the pellets would be made, the way those tasks were performed, or the final design of the drying facility. *See* Appx., Item No. 7 at 1 (Fort Worth "determined that direct thermal drying was the best option for Fort Worth"). Indeed, under the Contract, Fort Worth was financially penalized if residuals were landfilled instead of being put to beneficial reuse by land application. Appx., Item No. 8 at 0389.[9] Synagro had no ability to second-guess the directions it received from Fort Worth,[10] and it was

---

[9] Appx., Item No. 8 at 0499 (requiring Synagro to adopt a Residuals Management Plan that "shall state that biosolids will not be sent to a landfill without prior approval of the City.").

[10] Under the Contract, Fort Worth had final control over all aspects of the design and construction of the biosolids processing facility. *See* Appx., Item No. 8 at 0059 ("The Company acknowledges the City's material interest in each provision of the Design and Construction Requirements and agrees that no change to the Design and Construction Requirements shall be

unable to exercise discretion in implementing the design. To ensure compliance with its directives, Fort Worth had 24-hour access to its drying facility. *Id.* at ¶ 0038. Synagro is entitled to derivative immunity as an "organ" of the City. *See Brown & Gay,* 461 S.W.3d at 125 n.9.

Plaintiffs want to regulate Fort Worth and stop land application of biosolids through a massive tort lawsuit against its contractors. But the Complaint and judicially noticeable evidence establish Synagro performed a core government function that is immune.

## II.    The Texas Right to Farm Act precludes this lawsuit.

If the Court declines the jurisdictional challenge, the lawsuit should still be dismissed because the Right to Farm Act bars tort lawsuits against farming, ranching, and all supporting agricultural activities. Organic bulk fertilizers like manure and biosolids have long been central and essential to improving soil and fertilizing crops and are a key component of the agricultural endeavors that the Act shields from tort litigation. For decades the Legislature has recognized the paramount need to support Texas farms, adopting the Right to Farm Act (and recently clarifying its intended, and longstanding, broad scope) to prohibit private litigation from threatening to restrain lawful agricultural operations such as Synagro's. The Right to Farm Act passed over forty years ago to "reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations may be legally threatened, subject to suit, regulated, or otherwise declared to be a nuisance." TEX. AGRIC. CODE § 251.001.

The Act plainly and comprehensively states that "[n]o nuisance action or other action to restrain an agricultural operation may be brought against an agricultural operation that has lawfully

---

made except with the written consent of the City.") Further, while Synagro could propose design and construction requirement changes, all suggestions were subject to the City's consideration. *Id.* (¶ 10.7(a)). Fort Worth had the "absolute right to accept, reject or modify any Design and Construction Requirement Change proposed by the Company pursuant" to ¶ 10.7(a), and thus exercised complete control. *Id.*

been in operation and substantially unchanged for one year or more prior to the date on which the action is brought." TEX. AGRIC. CODE § 251.004(a). Here, Plaintiffs' factual allegations invoke the Right to Farm Act. Its application here to bar this large putative class action that would undermine and perhaps eliminate use of this fertilizer is necessary and appropriate.

### A.    Processing, distribution, and application of Synagro's Granulite fertilizer is a protected agricultural operation.

Suits are barred if they inhibit "agricultural operations," which include, but are expressly not limited to: "[C]ultivating the soil; producing crops for human food, animal feed, planting seed, or fiber; floriculture; viticulture; horticulture; raising or keeping livestock or poultry; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure." TEX. AGRIC. CODE § 251.002. Biosolids obviously come under this broad definition, consistent with the national trend in right-to-farm law protection.

First, Plaintiffs establish that Synagro's production and distribution of its Granulite fertilizer constitutes a covered agricultural operation. Synagro turns biosolids—organic matter derived from wastewater treatment—into compost, fertilizer pellets, and soil conditioners. Compl. ¶¶ 32-33 & 48. Plaintiffs state that the Granulite fertilizer is applied ("spread" and "mixed into the soil") to farms, including their neighbor's farm, as a fertilizer and soil conditioner to improve soil health, and was used by their neighbor as intended. Compl. ¶¶ 1, 26, 35, 85, 138, 154 and 179. Synagro's production and distribution for land application of its Granulite fertilizer is thus used in producing crops and cultivating the soil and is shielded from suit under the Right to Farm Act. TEX. AGRIC. CODE § 251.002.

Plaintiffs may argue that Synagro was not itself producing crops or cultivating soil, but Texas courts hold that activities that are "part of the process" for other listed agricultural operations receive protection under the Right to Farm Act. *See, e.g., Cal-Co Grain Co. v. Whatley*, No. 13-

05-120-CV, 2006 WL 2439973, at *5 (Tex. App.—Corpus Christi-Edinburg Aug. 24, 2006, pet. denied) (mem. op.) (grain storage facility was "part of the process" of feeding livestock and safeguarded by the Right to Farm Act); *Adcock v. Cal-Maine Foods, Inc.*, No. 03-22-00418-CV, 2024 WL 201963, at *1 (Tex. App.—Austin [3rd Dist.] Jan. 19, 2024, no pet.) (mem. op.) (applying Right to Farm Act to a chickenfeed mill).

Determining whether an agricultural operation falls within the Act's protections is a legal question for the Court. *See Hendrickson v. Swyers*, 9 S.W.3d 298, 300 (Tex. App.—San Antonio 1999, pet. denied) (using statutory construction that fighting cocks are not protected because the Right to Farm Act is intended to protect "activities that produce food"). Here, Synagro's work falls under the statute's umbrella– preparing and distributing fertilizer to grow crops and improve soils.

Texas's expansive Right to Farm Act is consistent with laws other states have adopted to protect agriculture from ruinous litigation by neighbors and anti-agriculture interest groups. Courts regularly protect all facets of agricultural production, including basic farming operations like compost, fertilizer, and pesticides. *See Collett v. Weyerhaeuser Co.*, No. CV 19-11144, 2020 WL 6828613 (E.D. La. Nov. 19, 2020) (Louisiana's farming protection law barred a suit against timber companies related to their application of chemicals close to their property line); *Odum v. Frey Spray, LLC*, 557 P.3d 1283 (Nev. App. 2024) (protecting pesticide application); *Vicwood Meridian P'ship v. Skagit Sand & Gravel*, 98 P.3d 1277 (Wash. App. 2004) (protecting composting operation at mushroom farm).

In fact, courts in several states have confirmed that their similar right-to-farm laws protect biosolids operations as agricultural functions, including the Pennsylvania Supreme Court in a case involving Synagro. *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1 (2015) (dismissing tort claims because Synagro's biosolids distribution and application was a "normal agricultural operation"

14

under Pennsylvania's right to farm law); *Matter of Lewis*, 316 A.3d 570, 574 (2024), cert. granted, 322 A.3d 1257 (2024) (upholding agricultural board's conclusion that "the application and stockpiling of" biosolids at farm "was a generally accepted agricultural practice," and thus protected from tort claims under Maryland right to farm laws). This is not surprising, given that bulk organic fertilizers have been integral to farming for millennia and that biosolids are recognized and regulated by EPA and the states.

### B.    Plaintiffs complain of conditions and circumstances that have existed substantially unchanged for more than one year before filing suit.

The Right to Farm Act functions as a statute of repose that bars suit when a lawful agricultural operation existed for over a year before the suit and its conditions have remained unchanged. *Holubec v. Brandenberger*, 111 S.W.3d 32, 38 (Tex. 2003). The defendant need not prove the exact start date—only that the operation began more than a year before the plaintiff filed suit. *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 821 (Tex. App.—El Paso 2010, no pet.).

Here, Plaintiffs only plead their neighbor obtained Granulite fertilizer in November 2022 that he tilled in January 2023. Compl. ¶ 85. Synagro was operating in Fort Worth for well over a year before November 2022, and this lawsuit was not filed until November 15, 2024, over two years after the application. Plaintiffs waited too long to file suit, clearly establishing this element, and triggering the statute of repose, no matter when Plaintiffs discovered any alleged injuries. Compl. ¶¶ 26, 92; Tex. Agric. Code § 251.004; *see also Holubec*, 111 S.W.3d at 38 (under the Right to Farm Act "it does not matter when the complaining party discovers the conditions or circumstances constituting the basis for the nuisance action.").[11]

---

[11] The Right to Farm Act clarifies that while *private parties* cannot restrain agricultural operations, *governmental* actions, including enforcement by TCEQ, are not similarly barred. *Id.*

### C.    Plaintiffs' causes of action are the type barred by the Act.

The Complaint's causes of action for negligence and product liability qualify as a "nuisance or other action" that seeks to "restrain an agricultural operation," and no artful pleading can avoid the Right to Farm Act bar. Under Texas law there is no requirement that the action be formally pled as a nuisance action.[12] Plaintiffs plead that their alleged injury is that their "land and water supplies were and continue to be polluted with PFAS and other toxic chemicals," causing exposure to humans and animals and costs for remediation and market value loss. Compl. ¶ 138 (negligence); ¶ 165 (products liability). Further, Plaintiffs define their purported class to include only those "who as a result of Defendants' biosolids have suffered a diminution in value of their property." Compl. ¶ 111.

The Right to Farm Act applies to all causes of action that target nuisance injuries from agriculture and seek to stop an agricultural practice. *See generally*, *Ehler*, 319 S.W.3d at 824 (barring trespass claims because allowing plaintiffs to simply plead a nuisance as another action would "eviscerate the statute and deny [a defendant] the protection intended by the Legislature"). Particularly here, where Plaintiffs base their products liability and negligence claims "on the same alleged conditions and circumstances creating a nuisance," courts do not hesitate to apply the statute of repose. *Adcock*, 2024 WL 201963, at *4 (Act "applies to trespass actions based on the same alleged conditions and circumstances creating a nuisance").

---

[12] Under Texas law, the "nuisance" "does not refer to the 'wrongful act' or to the 'resulting damages,' but only to the legal injury—the interference with the use and enjoyment of property—that may result from the wrongful act and result in the compensable damages." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 595 (Tex. 2016) ("nuisance" is "a legal injury that may support a cause of action, but it is not itself the cause of action or the conduct that is necessary to support the cause of action"). Accordingly, the Complaint's averments of chemical contaminants moving onto their land and causing damage are classic nuisance injuries.

The Legislature codified these holdings in 2023, clarifying that the Right to Farm Act prohibits not only claims for nuisance injuries but any "action to restrain an agricultural operation." TEX. AGRIC. CODE § 251.004. The request for injunctive relief against the farm use of biosolids is precisely the type of restraint the Act bars. *See* TEX. R. CIV. P. § 683 (every order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail … *the act or acts sought to be restrained.*") (emphasis added). Plaintiffs ask the Court to force Synagro to return the land to its condition prior to any "pollution or contamination," which they say originates from the land application of the Granulite fertilizer at their neighbor's property. ECF No. 1-11, ¶¶ 9 & 80. Thus, if Synagro is required to remove the Granulite fertilizer, Plaintiffs' neighbor may not continue to apply biosolids, nor could the neighbors of any of the numerous unnamed, putative class members or their neighbors.[13] Furthermore, exemplary damages are a restraint: "Plaintiffs request an award of exemplary and punitive damages in an amount reasonable, appropriate, and sufficient to punish these Defendants *and deter them from ever committing the same or similar acts.*" Compl. ¶ 141 (emphasis added); *see also Ehler*, 319 S.W.3d at 824 (applying the Right to Farm Act to bar claim for damages).

Plaintiffs here attack a major fertilizer used across Texas and the United States, presenting a textbook application of the Right to Farm Act under the statute, Texas precedent, and the protection of biosolids by other state courts. The facts pled by the Plaintiffs demonstrate that Plaintiffs' claims are extinguished.

---

[13] Plaintiffs further fail to state plausible class allegations to satisfy Rule 12, and Synagro reserves all rights to subsequently challenge the class allegations in future motions practice if the suit continues.

III.    **Plaintiffs fail to plead a products liability claim.**

Plaintiffs' claims further fail because Texas law only recognizes claims for products liability for a seller who, among other requirements, "sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property." *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997). Plaintiffs make no such cognizable claim.

A.    **Plaintiffs fail to state a claim for design defect.**

Plaintiffs argue that Synagro's product was "defective because it contained PFAS and other toxic chemicals," Compl. ¶ 146, but fail to plead facts to support a design defect claim. Under TEX. CIV. PRAC. & REM. CODE § 82.005(a), to recover for a claim of defective design, a plaintiff must plead and ultimately prove that: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). Plaintiffs do not meet their pleading burden on any element.

1.    **Plaintiffs omit any necessary risk-utility analysis.**

A "design is generally defective only if it yields a product that is unreasonably dangerous because its utility to its user and the public is less than the risks created by its use, considering both the gravity and likelihood of the risks." *Williams*, 2024 WL 628850, at *2. To plead unreasonable danger, claimants must engage a five-factor risk-utility analysis. *Grinnell*, 951 S.W.2d at 432. But Plaintiffs fail to do so, omitting the product's utility, possible substitutes, associated costs, and what *Synagro*—as opposed to Fort Worth—could have done to eliminate any danger. At most, Plaintiffs offer conclusory statements regarding an alleged danger, *e.g.*, Compl. ¶ 151, empty assertions that alleged danger is "unreasonable," and conclusory and readily contradicted allegations that Synagro violated applicable state and federal requirements. Plaintiffs provide no plausible explanation to support these alleged shortcomings. Compl. ¶ 151(i)-(j). Such

unsupported assertions are fatal. *See Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 741 (N.D. Tex. 2016) (dismissing when Plaintiffs did not plead a "specific manufacturing defect").

### 2. Plaintiffs do not identify any safer alternative design.

Plaintiffs alleged alternatives are not alternatives and, based on the facts alleged, are not feasible. A "safer alternative design" is a design that in "reasonable probability":

> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM. CODE § 82.005(b). Plaintiffs need "a reasonable alternative design that, at a reasonable cost, would have reduced [the] foreseeable risk of harm." *Timpte Indus., Inc.*, 286 S.W.3d at 314 ; TEX. CIV. PRAC. & REM. CODE § 82.005(a). Plaintiffs fail to address this prerequisite. Compl. ¶¶ 162-63; *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 258 (Tex. 1999), *see also Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 477 (E.D. Tex. 2021) (dismissing design defect claim without "specific factual allegations describing the purported safer alternative design").

Four of Plaintiffs' "alternative designs" (manure, compost, biofertilizers, and chemical fertilizers) are different products. Compl. ¶ 161(a)-(d); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 766 (5th Cir. 2018) (a "substantially different product" cannot constitute a safer alternative design). Plaintiffs baldly assert that another alternative would be for Fort Worth to require dischargers to remove the PFAS from their wastewater before it enters Village Creek. Compl. ¶ 161(e). This regulatory reform is, of course, not within Synagro's power. After all, Synagro is merely acting as Fort Worth's contractor, operating Fort Worth's facility, in a manner designed and directed by Fort Worth. The same goes

19

for requiring Village Creek to use chelators to "bind or remove heavy metals."[14] Compl. ¶ 161(f). This is another alternative that falls outside of Synagro's control. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998) ("[A] claimant must establish, among other things, that the *defendant* could have provided a safer alternative design.") (emphasis added).

Separately, Plaintiffs fail to state a design defect, because their proposed alternatives would not impact their alleged injury—Plaintiffs tell the Court that PFAS *cannot* be removed through treatment, *see* Compl. ¶¶ 4, 8, 36, 40, 66, and further argue that treatment causes some PFAS to biodegrade into other PFAS, *see* Compl. ¶ 40.

### 3. Plaintiffs lack causation.

Plaintiffs must demonstrate that their alleged defect caused their injury, meaning it was "a substantial factor in bringing about an injury, and without which the injury would not have occurred." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1044 (5th Cir. 2011); Tex. Civ. Prac. & Rem. Code § 82.005(a). Even assuming *arguendo* that Synagro's Granulite fertilizer contained PFAS, Plaintiffs fail to demonstrate how those particular PFAS caused their injuries.

Plaintiffs' allegations stress the ubiquity of PFAS in the environment, that PFAS are environmentally persistent, highly mobile, and "biomagnify." Compl. ¶¶ 38-39, 57, 68, & 70. All of this decisively undercuts any causation claims. Plaintiffs admit that even though no two "batches" of biosolids are alike, Plaintiffs did not test the batch applied. Compl. ¶ 95. Even the sample they tested did not align with PFAS compounds allegedly found on two of their properties. Compl. ¶¶ 87, 93. And even if Plaintiffs accurately tested the PFAS on their properties, TCEQ nonetheless determined those PFAS levels did "not represent levels that would harm human health

---

[14] And even if Fort Worth bound metals differently, Plaintiffs do not plead any actual harms derived from metals nor do they allege the Granulite fertilizer did not comply with the established regulatory limits for metals. *See* 30 Tex. Admin. Code §§ 312.43, 312.82, & 312.124 & 40 C.F.R. § 503.13, 503.15.

or the environment." Appx., Item No. 6 at 3. Plaintiffs also admit that their properties are fed by water wells that draw from an aquifer stretching across 17 different counties and overlaying an even larger aquifer that serves *millions* of people. Compl. ¶ 91. According to Plaintiffs, the aquifer has received PFAS discharges over the years that traveled great distances to appear in the groundwater, commingling and persisting, ensuring that Plaintiffs cannot plausibly plead that the specific PFAS in Synagro's Granulite fertilizer was what caused any PFAS-derived injury.[15] Plaintiffs simply plead themselves out of causation.

### B. Plaintiffs fail to state a claim for marketing defect.

A marketing defect occurs when "a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use." *Wright v. Ford Motor Co.*, 508 F.3d 263, 274 (5th Cir. 2007).

Despite including the product label—which contains warnings—Plaintiffs inexplicably claim the label fails to warn a user. Compl. ¶¶ 28, 175-77. Synagro's label warns about application and molybdenum rates, human ingestion, water proximity, flooded or frozen land, and storage conditions. Compl. ¶ 28. Plaintiffs conclude with no factual support that the Granulite label fails to comply with 40 C.F.R. § 503.14(e),[16] Compl. ¶ 177, even though the face of the label meets the standard. Compl. ¶ 28. They argue a user might have avoided runoff if the label were different, Compl. ¶ 175-78, disregarding its warning not to apply "in or near any public or private water supplies including wells, streams, or lakes," Compl. ¶ 28. Plaintiffs claim the label's instructions

---

[15] Plaintiffs do not attribute any actual injuries to non-PFAS constituents.

[16] Plaintiffs wrongly cite 40 **U.S.C.** § 503.14(e) but intended to cite 40 **C.F.R.** § 503.14(e) (Clean Water Act requirement to provide the name of the preparer of the product, a statement that application of the product be according to the instructions on the label or information sheet, and that the annual application rate does not exceed regulated loading rates.).

are insufficient but fail to explain how. *Williams*, 2024 WL 628850, at *4 (dismissing marketing defect claim when plaintiff "does not clarify what sort of warning might mitigate the risk.")

Just as Plaintiffs fail to articulate any cognizable theory of causation for their design defect claim, so too do they fail for the marketing defect claim. *See* Section III.A.3; *see also Doyle v. Combined Sys., Inc.*, No. 3:22-CV-01536-K, 2023 WL 5945857, at *13 (N.D. Tex. Sept. 11, 2023) (Kinkeade, J.) (dismissing marketing defect claim when plaintiffs fail to allege how communicating dangers to non-users of the product would have prevented harm). Plaintiffs' marketing defect claim is "simply a recitation of . . . elements and legal jargon" requiring dismissal. *Charles v. K-Pats., Inc.*, No. 1:17-CV-339, 2018 WL 9869532 at *6 (E.D. Tex. 2018).

## IV.     Plaintiffs do not plead a cognizable negligence claim.

### A.     Plaintiffs' claim is subsumed in their product liability theories.

Plaintiffs' negligence claim repeats their strict products liability theory under a different title. In Texas, when plaintiffs allege no negligence other than producing and selling a defective product, their "negligence theories are encompassed and subsumed in their defective product theories." *See Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 750 (5th Cir. 2018). Under the statute a "products liability action" is

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, *negligence*, . . . or any other theory or combination of theories."

Tex. Civ. Prac. & Rem. Code § 82.001(2) (emphasis added). Accordingly, Plaintiffs' negligence claim will "stand or fall on the outcome of their products liability claims." *Shaun T. Mian Corp. v. Hewlett-Packard Co.,* 237 S.W.3d 851, 857 (Tex. App.—Dallas 2007, pet. denied); *Williams*, 2024 WL 628850, at *2 ("If she fails to sufficiently plead that the [product] was defective for purposes of the strict liability [claim], then the negligence-based [claim] fails, too.").

Each of the alleged negligence elements are based solely on products liability theory. The alleged duty arises from the development and marketing of the product. Compl. ¶ 132 (e.g., "design . . . manufacture . . . marketing . . . labeling"). And the alleged misconduct is that Defendants made the biosolids fertilizers without satisfactory testing, studies, warning, reporting, representations, labeling, or protective measures. Compl. ¶ 135. The entirety of the negligent acts or omissions alleged deal in the product and its marketing. Compl. ¶¶ 141, 151, 183. Indeed, even the alleged injuries are identical between negligence and products liability. *Compare* ¶¶ 192, 165 *with* 138; ¶¶ 195, 169 *with* 141. The negligence claim exclusively centers on the same alleged duty, conduct, knowledge, and harm that underlie the products liability claims, and must be dismissed.[17]

### B.    Even if it were not subsumed, Plaintiffs fail to adequately plead negligence.

As with other jurisdictions, in Texas, "negligence has three elements: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). The threshold inquiry is duty: if there is no duty, liability for negligence cannot exist. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999).

To determine that a duty exists, Texas courts "consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants." *JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 417 (Tex. App.—Fort Worth 2014, no pet.) ("foreseeability is the foremost and dominant consideration"). The test for foreseeability is "whether a person of ordinary intelligence would have anticipated the danger his negligence creates." *Id.*

---

[17] Even if product liability claims survive, negligence claims should be dismissed where they merely restate the same theory. *E.g., Swagger v. Mack Trucks, Inc.,* No. 1:20-CV-1206-RP, 2023 WL 2557402 (W.D. Tex. Jan. 6, 2023) (dismissing duplicative negligence claims).

Plaintiffs allege Synagro's product contains PFAS or "other toxins," causing foreseeable harm to nearby properties. Compl. ¶ 136. However, they fail to explain how Synagro could have foreseen such risks. Compl. ¶ 66. Regulators have long known about PFAS but have not restricted use in biosolids. Compl. ¶¶ 64, 66. Nonetheless, the alleged PFAS levels on Plaintiffs' properties meet established human health and environmental thresholds. Appx., Item No. 6 at 3. It's unreasonable to claim Synagro should have foreseen harm where regulators still do not. *Lorenz v. Celotex Corp.*, 896 F.2d 148, 150-51 (5th Cir. 1990) ("[C]ompliance with government safety standards is strong and substantial evidence that a product is not defective.").

To plead breach of a duty, Plaintiffs must state how Synagro acted outside ordinary care, *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 541 (5th Cir. 2005), but they merely assert negligence without facts. Compl. ¶ 134. Plaintiffs rely on PFAS, a constituent ubiquitous in American life, but never explain how its presence shows negligence. No regulator has found any violation related to Synagro's activities. Appx., Item No. 4 (TCEQ specifically found "no violations" concerning the relevant land application of biosolids.)[18] Failing to indicate that Synagro acted less than "an ordinarily prudent person exercising ordinary care" under these circumstances, *see Boudreaux*, 402 F.3d at 541, the Court must dismiss.[19]

For a negligent act to be cause-in-fact, it "must have been a substantial factor in bringing about the harm," *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013), not simply "a condition which made the injury possible," *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Plaintiffs offer no facts supporting causation of any actual harm, offering

---

[18] Despite pleading that Johnson County "opened an investigation" in 2022, Plaintiffs allege no further action. Compl. ¶ 86.

[19] *White v. Royal Am. Mgmt*., No. 4:23-CV-792-P, 2024 WL 2805926 at *6 (N.D. Tex. May 15, 2024), Rpt. and Rec. adopted, 2024 WL 2805314 (N.D. Tex. May 31, 2024) (dismissing where plaintiff "fail[ed] to allege what duty [was] owed her and how [it was] breached").

only the remote possibility that the Granulite fertilizer may have contributed to alleged injuries. *See* Section III.A.3. Thus, Plaintiffs fail to plead a viable claim. *See Cuevas v. Westerman*, No. 1:14-CV-133, 2016 WL 11529760, at *11 (S.D. Tex. Nov. 10, 2016) (dismissing negligence claim)

## V.    The request for exemplary damages is improper.

Plaintiffs are not entitled to exemplary damages, Compl. ¶¶ 135, 151, 175, 195, & 198, which may be awarded "only if the claimant proves . . . (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE § 41.003(a). Plaintiffs fail to reach the high bar for exemplary damages; again, they fail to state a prerequisite negligence claim. Plaintiffs offer no facts to show "extreme" risk or "conscious indifference," to support a gross negligence theory, *see Id.* § 41.001, just the recital that Synagro acted with "deliberate disregard." Compl. ¶¶ 141, 169.[20] Nor could Plaintiffs plausibly plead exemplary damages for a practice approved by three government entities – EPA, TCEQ, and the City of Fort Worth. Appx., Item Nos. 1, 2, and 8.

## CONCLUSION

Plaintiffs' attempt at policymaking-by-lawsuit should end now. Importantly, Plaintiffs have a remedy for their concerns– Federal and state lawmakers and regulators, particularly TCEQ, can consider Plaintiffs' desire to ban this agricultural practice.

The threshold jurisdictional bar is dispositive of this lawsuit. Derivative government immunity bars this attempt to secure damages for and injunctive relief from Synagro regarding Fort Worth's wastewater treatment and management. If jurisdiction exists, the Legislature made the policy decision to protect farming and fertilizer when it adopted the Right to Farm Act decades ago. Moreover, Plaintiffs' template tort claims cannot plausibly satisfy the well-established pleading requirements of products and negligence law. Plaintiffs' suit should be dismissed.

---

[20] Plaintiffs' group pleading further forecloses exemplary damages. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 667 (Tex. 2008) (requiring individual allegations).

Dated: April 25, 2025                                  Respectfully submitted,

                                                      */s/ Christian Ellis*
                                                      **Bonds Ellis Eppich Schafer Jones LLP**
                                                      Christian Ellis
                                                      Texas Bar No. 24007154
                                                      christian@bondsellis.com

                                                      John T. Wilson IV
                                                      State Bar No. 24033344
                                                      john.wilson@bondsellis.com

                                                      Patrick D. Sheridan
                                                      State Bar No. 2407931
                                                      patrick.sheridan@bondsellis.com

                                                      Paul H. Farmer, Jr.
                                                      State Bar No. 24123478
                                                      paul.farmer@bondellis.com

                                                      420 Throckmorton Street, Suite 1000
                                                      Fort Worth, TX 76102-3727
                                                      (817) 405-6900

                                                      **Beveridge & Diamond P.C.**
                                                      J. Amber Ahmed
                                                      Texas Bar No. 24080756
                                                      aahmed@bdlaw.com

                                                      Collin S. Gannon
                                                      Texas Bar No. 24136164
                                                      cgannon@bdlaw.com

                                                      James B. Slaughter
                                                      *Admitted PHV*
                                                      jslaughter@bdlaw.com

                                                      400 West 15th Street, Suite 1410
                                                      Austin, Texas 78701
                                                      (512) 391-8018

                                                      **ATTORNEYS FOR DEFENDANTS
                                                      SYNAGRO TECHNOLOGIES, INC. AND
                                                      SYNAGRO OF TEXAS-CDR, INC.**

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 25, 2025, a true and correct copy of the foregoing document has been

served electronically on all counsel of record through the electronic filing manager.


*/s/ Christian Ellis*
Christian Ellis